## JOHN S. WOODALL vs. BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    January 16, 17, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence.    Elevated Railway.    Evidence,* Circumstantial.    *Boston Elevated Railway Company.*

In an action against a corporation operating an elevated railway for an injury from a particle of metal thrown out in the operation of the railway getting into the plaintiff's eye while he was crossing a street under the elevated structure as a train was passing overhead, the fact that the plaintiff crossed the street under the moving train shows no lack of ordinary care on his part.

In an action against a corporation operating an elevated railway for an injury from a particle of metal thrown out in the operation of the railway getting into the plaintiff's eye while he was crossing the street under the elevated structure as a train was passing overhead, the jury in answer to a question from the judge found that the piece of metal in the plaintiff's eye came from the operation of the contact shoe. The plaintiff testified that he was going under the structure and heard the noise of a train passing overhead and then the particle got in his eye. There was evidence that sparks frequently had been seen to fall in the general vicinity of the place of the accident when trains were in motion and that they sometimes fell in showers and reached the pavement. There also was evidence that the injury was caused by a particle of metal and not by a cinder, that there was a burn on the plaintiff's eye and that the particles thrown off by the contact shoe were hotter than those from the brake shoe, and also that the train was going in a direction where owing to the position of the stations there would have been no occasion to apply the brakes. There also was evidence tending to show that, although there had been a good deal of trouble from the sparking of the contact shoes, there had been no difficulty and no accidents to persons underneath by reason of sparks from the brake shoes. *Held,* that there was evidence warranting the finding of the jury.

In an action against a corporation operating an elevated railway for an injury from a particle of metal thrown out in the operation of the railway getting into the plaintiff's eye while he was crossing the street under the elevated structure as a train was passing overhead, if no one saw where the particle of metal came from and the plaintiff contends that it was thrown off by the contact shoe and that the defendant was negligent in failing to provide an appliance for preventing the falling of such particles upon the street below, the plaintiff is not bound to exclude the possibility of the accident having occurred in some other way, but only to satisfy the jury by a fair preponderance of evidence that the accident occurred in the manner in which he contends that it did.

In an action against the Boston Elevated Railway Company for an injury from a particle of metal thrown out in the operation of its elevated railway getting into the plaintiff's eye while he was crossing a street under the elevated structure as a train was passing overhead, in which the jury found on evidence warranting such a finding that the particle of metal came from the operation of the contact

shoe, the jury also found that the defendant was negligent in failing to apply to the railroad commissioners for the approval of a pan to prevent the falling of such particles on persons below.   St. 1894, c. 548, and St. 1897, c. 500, required the railroad commissioners to approve the plans for the railway before it could be constructed, and, after the completion of the whole or a part of it, required a certificate from them that it appeared to be in a safe condition for operation before the corporation could operate it.   The commissioners approved the plan for the railway and gave the certificate for operation after it was constructed. There was evidence that after the operation of the railway began it was known that there was a good deal of trouble from the throwing out of particles of metal, called "sparking," which had not been anticipated when the railway was constructed, but that nothing was done to remedy it, and that it would have been feasible to construct a trough or pan which would have prevented the falling of sparks upon persons in the street, that the railroad commissioners had the matter of sparking under investigation and had made no recommendation and taken no action except to cause the investigation to be made.   *Held*, that whether as matter of law the defendant should have applied to the railroad commissioners for the approval of a pan it was unnecessary to decide, but that, the jury having found that a pan was reasonably necessary, it was the duty of the defendant either to apply to the commissioners for their approval or to put up a pan without such approval, and that the finding of the jury was warranted.

MORTON, J.   Something which the jury found to be a piece of metal from the operation of the contact shoe on the defendant's elevated railway got into the plaintiff's eye while he was crossing Atlantic Avenue between one and two P. M. on January 23, 1902, and this is an action of tort to recover damages for the injury caused thereby.   There was a verdict for the plaintiff, and the case is here on exceptions by the defendant to the refusal of the judge to rule that on all the evidence the plaintiff was not entitled to recover.   The judge submitted two questions to the jury to be answered by them if they found for the plaintiff: "(1) Did the piece of metal in the plaintiff's eye come from the operation of the brake shoe or the contact shoe, or neither?" to which the jury answered, "The operation of the contact shoe," and "(2) Was the negligence of the defendant in the failure to use a different contact shoe, or in failure to apply to the railroad commissioners, for approval of a pan, or both?" to which the jury answered, "In failure to apply to the railroad commissioners for approval of pan."   Other questions not now material were submitted to them to be answered in case they found for the defendant.

The defendant does not now contend that the plaintiff was not in the exercise of due care and we therefore treat that question

as no longer in issue.    It is plain that in crossing Atlantic
Avenue, as the evidence tends to show that he did, no lack
of ordinary care could be imputed to the plaintiff.    He was
not bound to wait until there was no train passing overhead,
or until the train that was passing had gone along.    The sur-
face of the street was and is supposed to be safe for travel not-
withstanding the structure and trains overhead.

The defendant's contentions are two: first, that there is
nothing to show that what injured the plaintiff's eye came
from the contact shoe, and secondly, that there was nothing
to warrant the jury in finding that the defendant was negli-
gent in failing to apply to the railroad commissioners for approval
of the pan; the still further contention being included in this
last, that the effect of the answer of the jury to the second ques-
tion is to exclude from consideration any evidence of negligence
in the selection of the contact shoe that was used.

1. We think that there was evidence warranting the finding
by the jury that the particle which entered the plaintiff's eye
came from the operation of a contact shoe.    In the question to
the jury it was assumed, and without objection so far as appears,
that the particle was a piece of metal.    This assumption was
justified by the evidence.    The particle was described as about
a sixteenth of an inch in length and long, narrow, wedge-shaped
and pointed, " with the broad end somewhat wider than the edge
of a pin."    The oculist whom the plaintiff consulted testified
that the pupil showed a small scar and circular brown stain which
in his opinion were caused by a piece of steel or iron which he
thought was rusty.    On cross-examination he said that he had
never seen a hot cinder leave such a stain.    This evidence justi-
fied the conclusion that the particle was a piece of metal and not
a cinder.    The plaintiff's testimony and other testimony in the
case tended to show that it came from the elevated railway, and
the fact that it was a piece of metal increased the probability
that it did.    The plaintiff testified that he was going under
the westerly side of the structure and heard the noise of a train
passing overhead, and then the particle got in his eye.    He said
that he thought that he had crossed the first track and was about
to cross the second.    Whether he meant the surface tracks or
whether he meant that he had crossed under the first elevated

track and was about to cross under the second is not plain and is not material.   In either view it is clear that the particle got into his eye just as he was going under the elevated structure and as a train was passing overhead.   And there was testimony tending to show that sparks had been frequently seen to fall in the general vicinity of the place of the accident when trains were in ordinary motion and that they sometimes fell in showers and reached the pavement.   These circumstances rendered the inference that the particle came from the elevated railway a fair and reasonable one and warranted a finding to that effect.   The time and place of the accident, the character of the particle, the fact that a train was passing overhead, and that sparks fell from trains in ordinary motion would lead naturally to the conclusion that the particle came from the railway.   Whether it came from the brake shoe or the contact shoe or some other portion of the structure is more difficult to determine.   The oculist called by the plaintiff testified that he thought that the scar and stain which he found in the plaintiff's eye were caused by a piece of rusty iron or steel, and that, while the stain might have been caused by a piece of metal hot enough to produce charred tissue, he found no charred tissue ; which would tend to show that the particle came from some other portion of the structure.   But the plaintiff testified that the oculist who examined his eye on behalf of the defendant, and who was not called by the defendant, told him that there was a burn on the eye, which would tend to show that the particle came from the brake shoe or the contact shoe, from both of which heated particles were thrown off, though those from the contact shoe were hotter than those from the brake shoe and would therefore be more liable to cause a burn and scar than those from the brake shoe.   The direction in which the train was going was also important.   There was evidence that it was going north, and if so, owing to the positions of the stations, there would have been no occasion to apply the brakes.   The plaintiff could not tell which way it was going. But a companion who was with him testified that it was going north ; and though not willing to swear absolutely to it, said that there was no doubt in his mind that it was going north.   If the jury believed that the train was going north, then it would seem almost to follow that the particle could not have come from the

brake shoe.   Moreover there was testimony tending to show that although there had been a good deal of trouble from the sparking of the contact shoes, there had been no difficulty and no accidents to people underneath by reason of brake shoe sparks.   Taking all of the circumstances into account it was competent for the jury to find, and the evidence fairly warranted them in finding, that the particle came from the contact shoe.   The strength and direction of the wind, the exact position of the plaintiff, and the inferences and conclusions to be drawn from these and the other facts in evidence were all for the jury. The. plaintiff was not bound to exclude the possibility that the accident might have happened in some other way, but only to satisfy the jury by a fair preponderance of the evidence that it occurred in the manner in which he contended that it did.   In *McGee* v. *Boston Elevated Railway*, 187 Mass. 569, and *Wadsworth* v. *Boston Elevated Railway*, 182 Mass. 572, relied on by the defendant, there was nothing to remove the cause of the accident from the domain of conjecture.   In this case, though no one saw where the particle came from, the combination of circumstances was such as to warrant a finding, as already observed, that it came from the contact shoe.

2.   The defendant further contends, and this is its principal defence, ·that the evidence did not warrant a finding that there was any negligence on its part in failing to apply to the railroad commissioners.   If this defence fails, then it still further contends that there is nothing to show that the sparking could have been prevented by the exercise of ordinary care and diligence, and that the accident was not therefore due to any negligence on its part.

We assume in favor of the defendant that the effect of the answer to the second question is to show that the verdict was rendered on the ground that the defendant was negligent in failing to apply to the railroad commissioners, and that, if such an application was not required, and there is nothing in any view of the case to warrant as matter of law such a finding, then the verdict must be set aside.   The answer necessarily shows, we think, that the jury must have found that a pan was needed for the proper protection of pedestrians and others having occasion to use the roadway underneath the elevated structure ; otherwise

there would have been no occasion for the defendant to apply to the commissioners. Whether the sparking could have been prevented by the use of a different shoe, or by a different mode of adjustment, or both, the jury does not appear to have decided, having been apparently content with the conclusion that injury to pedestrians and others having occasion to use the roadway could be avoided by the use of a pan.

The railroad commissioners approved the plans for the railway as constructed and gave the certificate required before it could be operated and allowed it to continue as before after investigating the subject of sparking. The defendant contends that the action of the commissioners is not reviewable by the court or jury; that the effect of it is to authorize the operation of the railway without a pan; and that, therefore, there could be no such thing as negligence on its part in failing to apply to them for approval of a pan. The statutory provisions on which it relies in support of this contention are to be found in St. 1894, c. 548, § 18, and St. 1897, c. 500, §§ 2, 6. The first is entitled "An Act to incorporate the Boston Elevated Railway Company and to promote rapid transit in the city of Boston and vicinity," and the second is entitled "An Act to promote rapid transit in the city of Boston and vicinity" and is in amendment of and in addition to the first. The two acts, therefore, must be construed together. Section 18 of St. 1894, c. 548, provides in substance, so far as now material, that when the railway in any portion has been completed, before it shall be opened to public use it shall be examined by the railroad commissioners on the application of the corporation, and "if it appears to be in a safe condition for operation" the "board shall give a certificate to said corporation to that effect, which certificate shall be filed in the office of the secretary of the Commonwealth, and thereupon said corporation shall be authorized to operate said railway." Section 2 of St. 1897, c. 500, provides, so far as material, that the "corporation may construct lines of elevated railway according to such plans or systems as the board of railroad commissioners may approve, to be operated," etc. This is in amendment of the first paragraph of § 6 of St. 1894, c. 548. Section 6 of St. 1897, c. 500, provides, so far as material, that the corporation shall prepare and file with the railroad commissioners "plans showing the form

and method of construction proposed, and the proposed location of the tracks, elevated structure and stations," and the "board shall examine the same with reference to the strength and safety of the structure, and to the strength and safety of any bridge traversed thereby, and with reference to the rolling stock, motive power and method of operation, and with reference to the convenience and comfort of the public. . . . When said construction plans are satisfactory to said board they shall give a certificate approving the same." The corporation is not to proceed with the construction of the road till the certificate has been given, and if the plans are not satisfactory the board may require them to be changed before giving its certificate, and any structure erected in accordance with the plans may be changed or modified by the corporation with the consent of the board.

The effect of these various provisions is to require the commissioners to approve the plans before the railway can be constructed, and to require, after the completion of the whole or a part of it, a certificate from them that it appears to be in a safe condition for operation before the corporation can operate it. In examining the plans the commissioners are required to consider the strength and safety of the proposed structure, the rolling stock, motive power and method of proposed operation, and the comfort and convenience of the public ; and their judgment, in respect to these matters, so far as they enter into their approval of the plans, cannot be impeached or controlled. It cannot be shown, for instance, that the railway is unlawfully maintained, because the approval by the commissioners of the plans was due to a mistake on their part, if such was the fact, as to the strength and safety of the proposed structure or the comfort and convenience of the public. Their approval is conclusive on the right and authority of the corporation to construct its railway as proposed and has the same effect as an authority conferred by the Legislature to construct it in the manner proposed would have. Taken in connection with their certificate, under § 18 of St. 1894, c. 548, that the railway appeared to have been constructed in accordance with the plans, and appeared to be in a safe condition for operation, it established the structure as a lawful structure and as lawfully maintained and operated by the defendant. But neither the approval of the plans by the

commissioners nor their certificate of operation relieves the corporation from liability in case any one who would otherwise have a cause of action is injured by negligence on its part in the construction or operation of the railway. The test is not the approval or certificate of the commissioners any more than the satisfaction of the superintendent of streets was in *Osgood* v. *Lynn & Boston Railroad*, 130 Mass. 492. In the absence of anything to exonerate it, the corporation is still bound to exercise reasonable care and diligence in all matters relating to the construction and operation of its railway. It is expressly provided by § 21 of St. 1897, c. 500, that the corporation shall be subject to all the duties, liabilities and restrictions set forth in general laws relating to street railway companies so far as applicable, and the general laws relating to street railway companies make them liable for any loss or injury which may be sustained by any person in the management, use and construction of its tracks. R. L. c. 112, § 44. The object of the Legislature in requiring the approval of the plans by and the certificate of operation from the railroad commissioners was to ensure as far as might be by means of the preliminary investigations and examinations thus required the safety, comfort and convenience of the public. It was not intended, we think, as already observed, to relieve the defendant from the exercise of reasonable care and diligence in the construction and operation of the railway. If the approval of the plans by the commissioners and their certificate of operation are not conclusive on the question of the exercise of reasonable care and diligence by the defendant, manifestly the fact that the commissioners had had the matter of sparking under investigation and had made no recommendation and taken no action except to cause an investigation to be made cannot be held to be conclusive. See also *Hubbard* v. *Boston & Albany Railroad*, 162 Mass. 132.

Moreover it is to be noted, that trouble from sparking was not anticipated when the railway was constructed, and, therefore, the safety of the structure with reference to sparking could not have been included in the approval of the plans by the commissioners. It is also to be noted, that the certificate required before the corporation can operate the railway is a certificate that it appears to be in a safe condition for operation, not that it

is safe, thus leaving open the question of actual safety with all the consequences involved.

The plaintiff contends that the approval and the certificate of the commissioners came under R. L. c. 111, § 20, which provides that no request or advice of the commissioners shall impair the legal obligations of railroad corporations or relieve them from the consequences of negligence on the part of their servants or agents. But the approval and certificate, it seems to us, are to be regarded as something more than advice by the commissioners. They are in the nature of conditions precedent without which the defendant could not proceed to construct or operate its railway, and for want of which it could be restrained on the petition of any party interested from proceeding with the construction or operation of its railway. St. 1894, c. 548, § 20.

Whether the defendant should, as matter of law, apply to the commissioners for their approval of a pan it is not necessary for us now to decide. If a pan was reasonably necessary, as the jury, according to our view, have found was the case, then it was either the duty of the defendant to apply to the commissioners for their approval, or to proceed to put up one without such approval. *Chase* v. *Lowell*, 151 Mass. 422. It has done neither, and is consequently at fault if the evidence warranted the finding that a pan was required. Without going into the evidence in detail, it seems to us that it warranted such a finding. Assuming without deciding that the defendant had done as it contends that it had, all that, in view of the state of knowledge on the subject when the railway was constructed, it could be reasonably required to do to prevent sparking, its whole duty to safeguard the public from the dangers and injuries resulting from sparking was not thereby discharged. If there was any appliance which, in the reasonable operation of its railway, could be used to intercept the sparks or prevent them from falling to the ground and injuring pedestrians and others having occasion to use the street below, it was its duty to avail itself thereof. It was not enough for it to do all that could be reasonably required to prevent sparking (though we do not mean to intimate that it had done that) and stop there; it was also bound to do all that it reasonably could, if it was impossible to prevent sparking, to see that no one was injured by the sparks. Their duty

to exercise reasonable care to prevent injury to others extends to all particulars connected with the construction and operation of the railway, and is not entirely discharged even if satisfactorily performed as to some of those particulars. There was evidence that it would have been feasible to construct a trough or pan which would have prevented the falling of sparks upon persons in the street, and that it was known that there was a good deal of trouble from sparking after the road began operation in June, 1901, but nothing was done to remedy it. This warranted a finding of negligence on the part of the defendant. The weight and credibility of the evidence and the inferences and conclusions to be drawn from the testimony as a whole were of course for the jury. We see nothing to justify us in setting aside the verdict and granting a new trial.

Some questions of evidence are raised by the bill of exceptions, but they have not been argued and we therefore treat them as waived.

*Exceptions overruled.*

·*E. P. Saltonstall & S. H. E. Freund*, for the defendant.

*O. O. Partridge & H. M. Channing*, for the plaintiff.