WILFRED W. DAVIS *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Norfolk.     November 15, 16, 1915. — January 28, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence*, Street railway, *Res ipsa loquitur.*

In an action against a corporation operating a street railway for personal injuries sustained, when the plaintiff was standing on a station platform at a regular stopping place of the defendant's cars opposite the middle of a large semi-convertible car which either was starting or was coming to a stop, by reason of a piece of metal striking one of the eyes of the plaintiff when a noise occurred accompanied by a flash, bluish flame and smoke, which the plaintiff contended was the explosion of a fuse box on the car, there was evidence that after the accident a piece of lead about half an inch long and one quarter of an inch in diameter was taken from the plaintiff's eye, that "an excessive current in the wires of the car due to improper operation of the car or to some defect in the mechanism of the car" would be sufficient suddenly to melt the fuse and to throw particles of fuse metal from fifteen to thirty feet, and that the explosion as described would not have occurred if the controller, fuse and fuse box had been in good condition and the car had been operated properly, that, although the kind of fuse ordinarily used on this kind of car was a strip of copper, yet lead fuses were used in some cars of the defendant, that for at least six days before the accident the fuse on this car had not been inspected, and that the jaws of the clamp in the fuse box were sufficient to take in a lead fuse. The defendant contended that the piece of lead that entered the plaintiff's eye came from a bullet of a cartridge, but there was nothing to explain or to make probable the presence of such a bullet. *Held,* that a finding was warranted that the metal which entered the plaintiff's eye came from the fuse box and that the explosion was due to the negligent operation of the car by the motorman or to an improper or defective fuse, so that the case properly was submitted to the jury.

TORT for personal injuries sustained by the plaintiff on July 6, 1912, from being struck in the left eye by a piece of metal by reason of an explosion on a car of the defendant while the plaintiff was waiting for a car at the defendant's station at Brookline Village in the centre of Washington Street in the town of Brookline.  Writ dated August 6, 1912.

The declaration originally contained four counts, but the plaintiff at the beginning of the trial discontinued as to his third and fourth counts, and the trial proceeded on the first and second. The first count alleged negligent operation of the car on which the explosion occurred, and the second count alleged negligence of the defendant in furnishing improper material for the electrical apparatus and appliances of the car and in allowing such apparatus and appliances to become defective.

In the Superior Court the case was tried before *Irwin*, J. The evidence is described in the opinion. At the close of the evidence, the defendant asked the judge to make the following rulings:

"1. Upon all the evidence the plaintiff cannot recover on count one of the plaintiff's declaration.

"2. Upon all the evidence the plaintiff cannot recover on count two of the plaintiff's declaration.

"3. There is no evidence to warrant tne jury in finding that the piece of metal which struck the plaintiff in the eye causing his injury was a portion of the fuse or other part of the apparatus or appliances of the defendant's car concerned in this accident.

"4. There is no evidence in this case to warrant the jury in finding that the defendant carelessly and negligently furnished improper material for the electrical apparatus and appliances connected with the car concerned in this accident.

"5. There is no evidence sufficient to warrant the jury in finding that any part of the apparatus or appliances of this car was by force of an explosion blown into the eye of the plaintiff.

"6. The plaintiff has shown no facts from which negligence on the part of the defendant, its agents or servants, could be reasonably inferred as to the matters alleged in the first two counts of the plaintiff's declaration."

The judge refused to make any of these rulings, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $15,000. The defendant alleged exceptions.

*W. G. Thompson & P. R. Blackmur,* for the defendant.

*D. J. Gallagher, (S. Bishop* with him,) for the plaintiff.

DE COURCY, J. The plaintiff, when injured, was standing on the covered platform in the centre of Washington Street, Brookline, which was used by the defendant as a regular stop-

ping place and also as a point of transfer for its passengers. The time was about half past ten on the evening of July 6, 1912. An inward bound, large, semi-convertible car either was coming to a standstill, or just starting up, when there occurred a noise described as an "explosion," accompanied by a flash and smoke, and at the same time the plaintiff, who stood about opposite the centre of the car, and six feet back from it, was struck in the left eye by a foreign substance. When later this was removed it was found to be a piece of metal, ninety-nine and seventy-two one hundredths per cent lead. There seems to be no dispute as to the foregoing facts, or as to the plaintiff's due care.

At the trial the plaintiff contended that the metal which entered his eye came from the car, and he insisted that it came from the fuse box and was a part of the fuse. The defendant's contention was that the explosion did not occur in the fuse box, and that what injured the plaintiff was a slug or bullet from a cartridge. No other explanation of the accident was suggested.

As to the defendant's theory it is enough to say this: It was not supported by evidence that any one was seen discharging a firearm, — although the place was well lighted and many people were present; or by evidence that the shell of any cartridge was found on the track, — although search was made after the accident. And the jury well might regard this theory as incredible, in view of the improbabilities that a cartridge on the rail would remain unexploded by the car which preceded this one; that a bullet, discharged from the other side of the car or from the rail, would take such a course as to hit in the eye the plaintiff who was standing six feet from the car; and that it then would stop in its flight without piercing his brain. Finally they could find that the piece of lead, about half an inch long and one quarter of an inch in diameter, which was described by the chemist and the doctors, and which when removed came out the smaller end first, was not in fact a bullet from a cartridge.

In support of the plaintiff's contention, the jury could find the following facts, based on the evidence and inferences most favorable to him: That the explosion came from the fuse box; that it was preceded by a rattling noise "such as might occur when the brakes are put on a car or a car is stopping suddenly;" and that the noise was quite loud, similar to the back fire of an automo-

bile, and was accompanied by a flash, bluish flame and smoke. Further, from the expert testimony and the evidence on which it was based, they could find that the explosion and its accompaniments were caused by "an excessive current in the wires of the car due to improper operation of the car or some defect in the mechanism of the car," and that this excessive current was sufficient to suddenly melt the fuse, and to throw particles of the fuse metal from fifteen to thirty feet. As further bearing specifically on the two counts of the declaration which went to the jury, there was evidence that the explosion as described would not have occurred if the controller, fuse, fuse box and motor equipment were in good condition and the car properly operated; and that if the motorman tried to start the car with the brake on, coupling his brake and controller, he would control the application of power and might cause the fuse to blow out.

It is strongly argued by the defendant that on all the evidence the jury were not warranted in finding that the piece of lead which hit the plaintiff came from the fuse box. There was evidence introduced by the defendant from which it well might be found that the fuses used on this type of car were strips of copper, and that a lead fuse heavy enough to operate this car could not be inserted in the terminals of the fuse box. But there also was testimony that lead fuses were used in some cars of the defendant, that for at least six days before the accident this fuse box had not been inspected, that the jaws of the clamp were sufficient to take in a lead fuse, and that a fuse easily could be inserted by a person standing beside the car.

The statement in the bill of exceptions that it "comprises a statement of facts not in dispute and all of the evidence and proceedings material to the questions of law raised" does not limit the plaintiff's right to the full probative effect of the evidence in his favor, nor preclude him from arguing that the jury were free to discredit or discount that offered by the defendant. In *Horne* v. *Boston Elevated Railway*, 206 Mass. 231, 235, relied upon by the defendant, the case was presented on the plaintiff's uncontradicted evidence, and the court interpreted a similar statement in the exceptions as eliminating from that case any question of the kind before the court in *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314. But it is ap-

parent from the record in the case at bar that no such interpretation of the sentence quoted was intended or is applicable here.

Accordingly the jury, notwithstanding the evidence submitted by the defendant to the contrary, could find that there was an explosion in the fuse box, with accompanying circumstances indicating heat and force sufficient to melt and expel particles of metal. Simultaneously a piece of lead entered the plaintiff's eye. Only two possible causes of the injury were suggested; one, that it was due to a bullet from a cartridge, the other that it was caused by lead expelled from the fuse box. The first they well might consider as negatived by the evidence and probabilities already adverted to. And we cannot say, as matter of law, that in reasoning back from the effect to the existence of a cause, the jury could not logically and reasonably infer from all the facts that the lead which struck the plaintiff came from the fuse box. Necessarily the evidence as to where the lead came from was largely circumstantial, and as a practical matter the jury could reach a result only by drawing inferences from that evidence. But the conclusion which they reached was not based on mere conjectures; it was the result of logical reasoning from established facts. The case in this respect resembles many that have been before this court. For instance, in *Lowner* v. *New York, New Haven, & Hartford Railroad,* 175 Mass. 166, where a pail of sand fell from a railroad bridge upon the plaintiff, there was only inference to show who was responsible therefor. And in *Woodall* v. *Boston Elevated Railway,* 192 Mass. 308, the inference that the particle of metal which entered the plaintiff's eye came from the operation of a contact shoe on the defendant's overhead train was considered a fair and reasonable one in the circumstances and as warranting a finding to that effect. Many other instances occur in actions for loss by fire caused by locomotive engines. See *Bowen* v. *Boston & Albany Railroad,* 179 Mass. 524; *New York, Chicago & St. Louis Railway* v. *Roper,* 176 Ind. 497; *Farrell* v. *Minneapolis & Rainy River Railway,* 121 Minn. 357.

Without further discussion of the evidence in detail, a majority of the court are of opinion that the jury were warranted in finding that the metal which entered the plaintiff's eye came from the fuse in the fuse box, and that the explosion was due to the negligent operation of the car by the motorman, or to an improper or

defective fuse. There was no error in refusing the rulings requested. *Rowe* v. *Commercial Cable Co.* 216 Mass. 258. *Green* v. *Carigianis,* 217 Mass. 1. Wigmore on Ev. § 436 (2). *Lack* v. *Hargraves Mills,* 190 Mass. 56. *Thompson* v. *Lowell, Lawrence, & Haverhill Street Railway,* 170 Mass. 577. *Gilmore* v. *Milford & Uxbridge Street Railway,* 193 Mass. 44. *Beattie* v. *Boston Elevated Railway,* 201 Mass. 3. *Bresnahan* v. *Boston Elevated Railway,* 216 Mass. 114. *Lowner* v. *New York, New Haven, & Hartford Railroad, ubi supra. Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196. *Woodall* v. *Boston Elevated Railway, ubi supra. McNicholas* v. *New England Telephone & Telegraph Co.* 196 Mass. 138. *St. Louis* v. *Bay State Street Railway,* 216 Mass. 255.

*Exceptions overruled.*