MARY LYFORD, administratrix, *vs.* BOSTON AND MAINE
RAILROAD.

Suffolk.    January 9, 1917. — May 24, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CARROLL, JJ.

*Negligence,* Employer's liability, Causing death.  *Evidence,* Matter of conjecture.

At the trial of an action by an administrator against a railroad corporation, the intestate's former employer, for causing his death through negligence, there was evidence that the employee was a night watchman on a wharf and that it was his duty to "ring in" certain boxes, that, he not having "rung in" a certain box at the appointed time, a search was instituted within a few minutes; that certain of his personal belongings were found at once and the next morning his lifeless remains were observed near the box which he next should have "rung in;" that there were no marks of violence upon his body and no indication of injury preceding death; that medical experts were unable to state whether the employee had had a stroke of paralysis or vertigo or heart disease previous to falling into the water; that in the path which he should have traversed to reach the box he next should have "rung in" were cleats and one board which projected a little at one end and which, although loose, would not move when walked upon.  No one saw what happened to the employee.  *Held,* that there was no evidence warranting a finding that negligence of the defendant or any of its employees caused the death of the plaintiff's intestate.

TORT under St. 1909, c. 514, § 129, as affected by St. 1911, c. 751, Part I, §§ 1, 3, by the administratrix of one who on November 5, 1914, met his death while in the employ of the defendant. Writ dated March 24, 1915.

In the Superior Court the action was tried before *Stevens,* J. The material evidence is described in the opinion.  At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*H. B. Ehrmann,* (*W. J. Bloom* with him,) for the plaintiff.

*A. R. Tisdale,* for the defendant, submitted a brief.

RUGG, C. J.  This is an action of tort under the employers' liability act, St. 1909, c. 514, § 129, as affected by the workmen's compensation act, St. 1911, c. 751, Part I, §§ 1, 3, to recover damages for the death of an employee of the defendant.  As the defendant does not appear to have been a subscriber under the workmen's compensation act, the decisive question is whether

there was any evidence tending to show negligence on the part of the defendant or its servants.

The deceased was a night watchman upon Mystic Wharf. There was evidence tending to show that it was his duty to "ring in, at regular intervals, certain boxes, twelve in number, situated at various points on the wharf. . . . at 6.30 P.M. on November 5, 1914, the deceased began to make his rounds of the boxes for the first time that day, that he rang in seven boxes as usual, but never rang in another box." Because of the failure to ring in the next box a search was instituted within a few minutes, but no trace of him then was found except his hat floating in the water and his keys on a lighter moored to the wharf. A man near by heard a splash in the water and next morning the lifeless remains of the deceased were found clinging to one of the piles near the eighth box. He was a man of good habits, in excellent health, and never troubled with vertigo or heart disease, but according to the medical examiner, "it was impossible to say, from his examination, whether or not the deceased had a stroke of paralysis, or vertigo, or heart disease, prior to falling into the water." The death was due to drowning and there were no marks on the body indicating an injury before death. The wharf was entirely covered by a shed, with the exception of a strip about two feet wide. Outside this and along its outer edge extended a raised log one foot in diameter capping the outer row of piles supporting the wharf. Along the inside of the log at varying intervals were large iron cleats around which ropes were wound to make lighters fast to the wharf. The eighth box was reached only by this narrow space, which must be traversed for about fifty feet. There was a loose plank in the flooring "about midway between two escalators or drops" and in the path of one going to the eighth box. This loose plank was about twenty inches long and seven inches wide, fitting into the walk, level to the rest of the planking as far as could be observed, although there was a slight accumulation of dirt under it and one end projected a little. It would not move when walked upon.

There is nothing in this evidence to show that the deceased met his death through any negligence of the defendant. It is wholly a matter of conjecture how the deceased happened to get into the water. It is entirely speculation whether it was due in

any degree to negligence of the defendant. There is nothing stronger than surmise that he may have tripped over the loose plank rather than against one of the iron cleats, or fallen into the water from some other cause. The case is well within the authority of numerous decisions, only a few of which need be cited. *Childs* v. *American Express Co.* 197 Mass. 337. *Bigwood* v. *Boston & Northern Street Railway*, 209 Mass. 345. *Leary* v. *Fitchburg Railroad*, 173 Mass. 373. *Ridge* v. *Boston Elevated Railway*, 213 Mass. 460. *Sanderson's Case*, 224 Mass. 558. *Moynihan* v. *Boston & Maine Railroad, post*, 180.

*Exceptions overruled.*