FRANCIS L. GARDNER & another *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol.   October 22, 1917. — November 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Evidence,* Circumstantial.

In an action by the owner of a pasture adjoining a railroad location against the railroad corporation owning such adjoining land for the alleged poisoning of heifers belonging to the plaintiff, it appeared that the heifers were found dead, that on the plaintiff's land near the division fence between the plaintiff's land and that of the defendant were found various articles of rubbish, some of which might be inferred to have come from the station or freight house of the defendant and some of which obviously did not, and that in the bushes nineteen feet from the division fence was found a wooden keg open at the top, which contained a small quantity of a loose white powder. The plaintiff contended that this was arsenate of lead, a poison. It was assumed, for the purposes of decision, that on all the evidence the jury could have found that this white powder was arsenate of lead and that the plaintiff's heifers were poisoned by it. *Held,* that, with this assumption, there was nothing to show that the keg belonged to the defendant or ever had been in its possession or on its premises or in the possession of any of its employees, that the plaintiff had failed to show by any direct evidence or by any reasonable inference from established facts that the keg containing poison was placed in the pasture by any negligence or wrongful act for which the defendant was responsible and that a verdict rightly was ordered for the defendant.

TORT, the declaration alleging that the plaintiffs owned pasture land in Swansea which they used for pasturing cows and which adjoined premises owned and occupied by the defendant, that without the knowledge of the plaintiffs the defendant by its agents and employees negligently and wrongfully threw upon such pasture land of the plaintiffs poisonous substances whereby three heifers belonging to the plaintiffs were poisoned and caused to die. Writ dated October 26, 1914.

In the Superior Court the case was tried before *Morton,* J. At the close of the plaintiffs' evidence, which is described in the opinion, the judge ordered a verdict for the defendant and reported the case for determination by this court, with a stipulation of the parties that, if the ordering of the verdict was wrong, judgment was to be entered for the plaintiffs in the sum of $500; and that otherwise the verdict, as ordered, was to stand.

*L. E. Wood,* for the plaintiffs.

*A. W. Blackman,* for the defendant.

DE COURCY, J. This action of tort was brought to recover from the defendant for the loss of three heifers. The contention of the plaintiffs is, that the cattle were poisoned by eating arsenate of lead, alleged to have been negligently and wrongfully placed on the plaintiffs' pasture land by agents and employees of the defendant.

The station lot of the defendant in the town of Swansea was bounded on the south by the railroad right of way, on the west by Gardners Neck road, and on the north and east by the pasture lot of the plaintiffs. In the latter part of August, 1914, two heifers, which the plaintiffs pastured in this lot, were found dead, and the third was removed but died later. One of the plaintiffs, on looking over the pasture, found near the division fence various articles of rubbish, such as paint and tomato cans, pails, rope, trolley poles, broken crockery and pieces of black board. In the bushes nineteen feet east of the fence he found a wooden keg, which was open at the top, and contained a small quantity of what appeared like loose white powder.

Assuming in favor of the plaintiffs that on all the evidence the jury could find that this white powder was arsenate of lead, and that the cattle were poisoned by it, the burden was on them to go further and show that the poison was deposited in their pasture by some one for whose action the defendant was legally liable. There was no evidence that said keg belonged to the defendant, or ever was on its premises, or in the possession of any of its employees. One Sheehan had left a keg and other apparatus used for spraying trees, at the station in 1910; but so far as appears it was shipped to Providence by freight or express, as he directed. While it might be inferred that some of the rubbish found in the pasture came from the station or freight house, obviously some of it had not been

in the possession of the defendant; and besides the keg was found at another spot. Not only was there no evidence that any employee of the defendant put the keg in the pasture, but there was an equal opportunity to do so by the numerous persons who came in vehicles to the station or freight house or post office, or drove into the freight yard by the way adjoining the pasture. In short, the plaintiffs failed to show either by direct evidence or by reason-, able inference from established facts, that the keg containing poison was placed in the pasture by any negligence or wrongful act for which the defendant is responsible. On the evidence we are left wholly to conjecture and surmise to determine where the keg came from, or how it got where it was found. *Bigwood* v. *Boston & Northern Street Railway,* 209 Mass. 345. See also *McCulloch* v. *Needham,* 217 Mass. 227; *Lyford* v. *Boston & Maine Railroad,* 227 Mass. 10.

In accordance with the report, the verdict for the defendant is to stand, and it is

*So ordered.*