JOHN F. SHEEHAN, administrator, *vs.* LEV GORIANSKY.

Middlesex.    May 3, 1944. — September 13, 1944.

Present: FIELD, C.J., QUA, RONAN, & WILKINS, JJ.

*Wanton or Reckless Conduct.    Motor Vehicle,* Trespasser, Operation. *Evidence,* Consciousness of liability.

Testimony by a defendant which the jury could have found to be intentionally false, and testimony as to inconsistent statements made by him out of court, were evidence of consciousness of liability for a death resulting from an accident in which an automobile operated by him was involved, and not merely evidence of a desire on his part to conceal the fact that the death was caused by the accident.

Evidence warranted findings that the operator of an automobile knew that a trespasser was on the running board and that the operator was guilty of wanton or reckless conduct toward the trespasser by

---

turning the automobile partly off the traveled surface of the road onto a dirt shoulder and increasing speed so that after a short distance the automobile ran head on into a pole and the trespasser was thrown off the automobile against a tree and was killed.

TORT. Writ in the Third District Court of Eastern Middlesex dated March 21, 1941.

Upon removal to the Superior Court, the action was tried before *O'Connell*, J.

*F. P. Garland*, (*R. B. Snow* with him,) for the defendant.

*D. J. Lyne*, (*W. A. Ryan* with him,) for the plaintiff.

WILKINS, J. This is an action of tort to recover for the death of the plaintiff's intestate, John F. Sheehan, Junior. The one count submitted to the jury alleged that on August 24, 1940, the deceased was a passenger in an automobile operated by the defendant on a public way in Sudbury, that the defendant "so wilfully, wantonly, and recklessly" operated the automobile as to cause the same to collide with a telegraph pole, resulting in Sheehan's death on the same day. G. L. (Ter. Ed.) c. 229, § 5, as amended. The jury returned a verdict for the plaintiff, and the defendant's exceptions present the sole question whether there was error in the denial of the defendant's motion for a directed verdict, which was not based upon the pleadings. See *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 385; *Beit Bros. Inc.* v. *Irving Tanning Co.* 315 Mass. 561, 563.

The jury could have found the following: On August 23, 1940, the defendant drove a 1936 coupé belonging to his wife from his home in Wellesley to Maynard, arriving just before 10 P.M. After diverting himself for about an hour and a half in visiting a Finnish bath on Florida Street and two cafés, he was ready to return to Wellesley. He then found that he could not start the motor. Inquiry satisfied him that no garage was open, so he began working on it himself. It was between 11:30 and midnight and the automobile was stopped in the street near a light. While he was thus engaged, an intoxicated man back of him was bothering him, talking to himself for a few minutes, and finally addressing to the defendant a request for a cup of coffee. Without turning around, straightening up, or

ceasing work, the defendant reached into his pocket, gave the man two nickels, saying, "Go away, don't bother me." The latter stopped talking, but the defendant did not see him go away. Soon the defendant had the motor running, and after looking around and not seeing anyone got into the automobile. Observing that the engine was working all right, he drove at least a thousand feet, and beyond a café turned in off the street. Later he returned and seated himself in the automobile. He then saw through the glass of the door on his right, close to the window, a man, "worn out and drunk," who asked for a "lift." The voice was that of the man to whom he had given the ten cents. As soon as he saw the man, the defendant closed the window, and locked the door, according to his testimony, which the jury could have disbelieved, accepting instead the testimony of a dealer that this model of automobile could be locked not from the inside but only with a key from the outside. In height this man was four or five inches above the line of the top of the glass, which was about at his eyebrows. As he stood leaning over, his head was so that the defendant could see over his eyebrows. His forehead was close to the window bent over right against it. The defendant could not see his legs, and did not know where his feet were. The man had hold of the handle and began jiggling it. The defendant started the automobile "with a big jerk." After it started, he heard the man swearing. He was nervous, and "went full speed towards home." As to the cause of his nervousness, the defendant testified, "He annoyed me. I thought he wanted to hold me up or something." The defendant took route numbered 117 toward Waltham. It was then about midnight. There was no traffic. Later when two or three miles out of Maynard moving at thirty-five or forty miles an hour he turned the automobile off the hard surface of the road so that at least part of it went onto a dirt shoulder one and one half feet to three feet wide. He then increased speed, and, proceeding a distance of about two hundred feet on the shoulder, ran head on into a telegraph pole located in underbrush four to six feet from the hard surface of the road. The defendant's

explanation that he was blinded by the headlights of another automobile approaching on the wrong side of the road the jury were not bound to accept. *Baines* v. *Collins*, 310 Mass. 523, 525–526. The point of impact was the right side of the bumper. The pole, which split and snapped off, was wedged between the right front fender and the bumper. There was no appreciable damage to the running board. The right front headlight was shattered, and the left side of the windshield in front of the driver's seat was cracked. The defendant went to a house nearby to ask someone to telephone to a garage, and in the course of the conversation with a woman said, "I had a bad accident down the road." "There is a man hurt very badly." The defendant returned to the scene of the accident, and was later taken to a hospital by some young men in an automobile. He told these young men and the police that he had been alone. He also told a State police officer that he thought at the time of the accident someone was trying to kill him, and he had an impending fear of death.

Between 10:30 and 11 A.M. August 24, 1940, the body of the deceased was found in thick shrubbery six to eight feet off the road with the head in close proximity to the trunk of a pine tree which stood sixteen feet beyond the telegraph pole toward Waltham. Six inches from the ground the bark was freshly knocked off the tree in an irregular scar four inches long and two and a half to three inches wide. There was blood on the ground near the body, and in the area near the tree were parts of the automobile and pieces of broken glass from the headlight. According to the medical examiner, death, which in his opinion had occurred between 10 P.M. and 4 A.M., was caused by a compound fracture of the skull due to being thrown violently against a fixed object. The scar in the trunk contained hairs from the deceased's head. Bark from the tree was found in the head and trouser legs. On the palms of the hands and on the fingers there was grease like that from an automobile. On the deceased's chest, near his necktie, lay a right hand suede glove with a wool lining, stained with blood. This glove belonged to the defendant's wife, and its mate was on the shelf in the back

of the automobile, where the pair of gloves was customarily kept. The deceased's brain on chemical analysis showed an alcoholic content equivalent to "about three shots of whiskey." On the evening of August 23 about three minutes before midnight the deceased, who was twenty-one years of age, five feet ten inches in height, and weighed one hundred seventy-five pounds, had left a Finnish bath on Powder Mill Road, Maynard. He had been in the company of three other young men.

The coupé had only one seat inside, and that was for the driver. Beside the driver there was a "baby seat," and a passenger would have to ride in the rumble seat. Following the accident the rumble seat was found closed. The spare tire mounted on the rear was "off to one side," and its metal cover was off. The right hand door was locked.

There was no evidence that the defendant was affected by liquor, and there was evidence that he was not. There is, therefore, no question of intoxication on his part. *Adams* v. *Doucet*, 316 Mass. 1, 3.

The defendant rightly concedes that the circumstantial evidence was sufficient to warrant the jury in finding that the deceased was killed when the defendant's automobile collided with the pole. It likewise could have been found that the deceased had been somewhere on the automobile. Although fresh from the baths there was automobile grease on his hands. Had the deceased been a pedestrian who was struck, the jury might have thought that there would have been broken bones or other bodily injuries; they were lacking. No suggestion has been made as to how the deceased, if not on the automobile, could have reached the fatal point at least two miles out of Maynard in a thinly populated community on the Sudbury road in the limited time elapsing between his leaving the baths and the moment of the collision, particularly as the defendant saw no other automobile before reaching the scene. If the deceased were on the automobile, he was there without invitation and in the circumstances was a trespasser to whom the defendant owed the duty to refrain from wantonly or recklessly exposing him to danger. *Massell* v. *Boston Elevated Railway*, 191

Mass. 491, 493. *Theriault* v. *Pierce,* 307 Mass. 532, 534. *Little* v. *Levison,* 316 Mass. 159, 162–163. And the judge so charged the jury without objection. *Button* v. *Crowley,* 284 Mass. 308, 313. *Sluskonis* v. *Boston &. Maine Railroad,* 299 Mass. 413, 415.

The defendant contends that there was no evidence that he knew that the deceased was on the automobile, and that, even if he did, there was no evidence of wanton or reckless conduct. We are unable to agree with either contention.

The jury could have found that the deceased was on the right running board. Whether he was crouching or in some other posture, and whether he was gripping the door handle or maintaining a tenuous hold in some other way are not important, as the plaintiff was not bound to show the precise manner in which the deceased met his death. *Capano* v. *Melchionno,* 297 Mass. 1, 8. *D'Ambrosia* v. *Brest,* 302 Mass. 316, 318. *Thomas* v. *Spinney,* 310 Mass. 749, 751–752. When the rapidly moving automobile crashed to a full stop against the pole, the trajectory thereby caused to be described by the deceased's body through the air to the base of the tree trunk could reasonably have been found to have begun from a point on the right running board. Indeed it is difficult to conceive of any other position from which the accomplished course of flight could have started. The deceased must have been at a place offering no impediment to free progress forward. He could not have been on the bumper or fender, for he would have been crushed against the pole. Certainly the defendant's suggestion that he must have been holding onto the spare tire on the rear is far from convincing. The expert evidence failed to reveal on the automobile any blood or pieces of hair, cuticle, or clothing traceable to the deceased. There was no damage to the rear of the automobile other than that the spare tire was "off to one side" and its metal cover off, results which might have been attributable to the impact alone. One would expect that momentum first would have carried the flying body with great force against the rear of the automobile had the deceased been clutching the spare tire.

The jury were not required to believe the defendant's

testimony that a photograph of the deceased was not of the man who first solicited money for coffee and later a ride, or that the deceased was not on the running board when he jiggled the door handle, or when the defendant started the automobile "with a big jerk" and "went full speed." The defendant urges that disbelief of testimony was not evidence to the contrary. See *Wakefield* v. *American Surety Co.* 209 Mass. 173, 177; *Tanona* v. *New York, New Haven & Hartford Railroad*, 301 Mass. 589, 592. There was, however, more than mere disbelief of the defendant. After the violent start the defendant heard the man swearing. The jury could also infer that a man of the weight and height of the deceased who was on the running board of a coupé long enough to travel two miles might have been observed by the defendant either visually or from sag of the automobile. The defendant's assertion of a sensation of impending death by murder accompanied by turning from the hard surface of the road on to the shoulder and then by accelerating an already rapid rate of speed which he maintained for two hundred feet until striking the pole might be considered on the issue of knowledge of the deceased's presence, and as indicating at least a willingness on the part of the defendant to be rid of an unwelcome rider. Compare *Baines* v. *Collins*, 310 Mass. 523, 526–527; *Commonwealth* v. *Goldenberg*, 315 Mass. 26.

The testimony of the defendant that he locked the door and that no one was with him, which the jury could find to be intentionally false, and his inconsistent statements as to whether another man had been injured were also factors which could be considered as indicating a consciousness of liability. *Commonwealth* v. *Devaney*, 182 Mass. 33, 35–36. *Commonwealth* v. *Spezzaro*, 250 Mass. 454, 457. *Commonwealth* v. *Gentile*, 255 Mass. 116, 118. *Commonwealth* v. *Sacco*, 255 Mass. 369, 421. *D'Arcangelo* v. *Tartar*, 265 Mass. 350, 352. *Commonwealth* v. *McCarthy*, 272 Mass. 107, 110–111. *Hall* v. *Shain*, 291 Mass. 506, 512–513. Such false testimony and such conduct are in the nature of admissions from which with other evidence liability could be inferred. *Boston* v. *Santosuosso*, 307 Mass. 302, 349. See *Barker* v.

*Savas,* 52 Utah, 262, 267–268. The defendant contends that this was at most evidence of a desire on his part to conceal the fact that the death of the deceased was caused by the accident. Whether it was evidence merely of consciousness of participation in the accident, *Frasciello* v. *Baer,* 304 Mass. 643, 646, or whether it was evidence of the ground of liability alleged by the plaintiff was for the jury. *Commonwealth* v. *Derby,* 263 Mass. 39, 46–47. The charge of the judge in *Commonwealth* v. *Sacco,* 255 Mass. 369, 395, not only is not inconsistent with this principle, but supports it.

There was also the extraordinary and mystifying evidence as to the bloody glove on the deceased's chest, which tended to prove that the deceased had been on the automobile with the defendant. Compare *Commonwealth* v. *O'Neil,* 169 Mass. 394, 397; *Commonwealth* v. *Williams,* 171 Mass. 461; *Commonwealth* v. *Best,* 180 Mass. 492, 496; *Commonwealth* v. *Tucker,* 189 Mass. 457, 466–467; *Commonwealth* v. *Richmond,* 207 Mass. 240, 244; *Uzzio's Case,* 228 Mass. 331, 333; *Commonwealth* v. *Sacco,* 255 Mass. 369, 430–432.

If the jury concluded that the defendant knew that the deceased was on the running board, it was open to them to infer that the defendant's conduct was in disregard of probable harmful consequences to the deceased and in violation of the duty to refrain from wantonly or recklessly exposing him to danger. *Aiken* v. *Holyoke Street Railway,* 184 Mass. 269. *LeSaint* v. *Weston,* 301 Mass. 136. *Baines* v. *Collins,* 310 Mass. 523, 525–526. See *Commonwealth* v. *Welansky,* 316 Mass. 383, 397.

This is not a case resting upon conjecture like *Bigwood* v. *Boston & Northern Street Railway,* 209 Mass. 345, *Lyford* v. *Boston & Maine Railroad,* 227 Mass. 10, and similar cases. The evidence, to be sure, was chiefly circumstantial, but the conclusion reached was based on reasonable, although not necessary, inferences, and "was the result of logical reasoning from established facts." *Davis* v. *Boston Elevated Railway,* 222 Mass. 475, 479. *Commonwealth* v. *Merrick,* 255 Mass. 510, 514. See *Kelly* v. *Railway Express Agency, Inc.* 315 Mass. 301.

*Exceptions overruled.*