UNITED STATES of America,
Appellee,

v.

Peter E. SAHADI, Appellant.

Nos. 275–276, Dockets 26559–26560.

United States Court of Appeals
Second Circuit.

Argued May 23, 1961.

Decided June 28, 1961.

Wallace R. Burke, Hartford, Conn. (Maxwell Heiman, Hartford, Conn., on the brief), for appellant.

Harry W. Hultgren, Jr., U. S. Atty., D. Connecticut, Hartford, Conn., for appellee.

Before CLARK, HINCKS and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

The appellant was charged and tried on three indictments, two of which each contained two counts. One of these charged violations of 18 U.S.C. § 500 by knowingly passing four money orders illegally issued, which were later received in evidence as Exhibits H and T. The other indictment charged two similar vio-

lations through such passing of two such money orders, which were later received in evidence as Exhibits F and G. The third charged appellant and others in a single count of conspiracy to "with intent to defraud the United States, utter and publish as true altered money orders." In the conspiracy indictment, the overt acts alleged were the substantive offenses charged in the other two indictments. Prior to trial the court denied appellant's motion that the conspiracy indictment be tried separately. On the trial, at the close of the government's case the judge ordered the conspiracy case to be dismissed for lack of evidence. The other indictments were fully submitted to the jury which on the two counts of one indictment returned verdicts of guilty and as to the other reported itself unable to agree. From the conviction this appeal is prosecuted.

The appellant's main contention is that there was insufficient evidence to support the conviction. Concededly, there was evidence that the money orders had been unlawfully issued and that the appellant had negotiated these money orders as alleged. The crucial question is whether there was evidence that the appellant knew the money orders were illegally issued.

Of course, the conceded facts that Di Pietroantonio, in whose handwriting, according to the undisputed testimony of the government's expert, the stolen forms had been filled in, was an acquaintance of the appellant, had in December 1959 bought of him a secondhand automobile with which he was dissatisfied (according to appellant's own testimony) and had been called by him many times from his home and from his place of business, were not of themselves enough to damn the appellant. Our jurisprudence has steadfastly rejected the doctrine of guilt by association. However, the fact of the relationship has some significance as showing that for information as to the spurious character of the money orders the appellant did not have to go outside those with whom he was in frequent communication.

■ But there was more to support the verdict than evidence of an innocent association between the appellant and Di Pietroantonio, the forger. Although the money orders were stolen in Florida on or about December 6, 1959, they were stamped [1] with dates in early January. There was independent evidence that the appellant had possession of Exhibits F and G in early January 1960. He himself testified that he had acquired Exhibits H and T on January 13, 1960. Di Pietroantonio's Connecticut residence and the passing of the money orders to the appellant in Connecticut constitute evidence that the forgery had been done in Connecticut. United States v. Di Pietroantonio, 2 Cir., 289 F.2d 122. These facts give room for inference that the money orders were illegally issued not until early January 1960 shortly before they were proved and admitted to be in the appellant's possession. For it is reasonable to infer that with the government date stamp in his possession, the forger would not date the orders until he was about ready to issue them. Sahadi's acquisition of possession so shortly after the probable date of illegal issue supports an inference that his possession was with guilty knowledge: he was in possession of the fruits of recent crime. Such an inference has been recognized in a host of cases stemming from Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090. Cf. United States v. Petrone, 2 Cir., 185 F.2d 334, certiorari denied 340 U.S. 931, 71 S.Ct. 493, 95 L.Ed. 672. True, such an inference is subject to explanation and will be dispelled if the accused raises a reasonable doubt of his guilt. United States v. Lefkowitz, 2 Cir., 284 F.2d 310,

---

1. The operator of the post office substation from which the orders were stolen testified that her entire safe was stolen. Although there is no direct evidence on this point, it may be assumed that the safe's contents included the substation's date stamp as well as the money order forms in blank.

313–314. But in this case Sahadi's attempts to explain his possession of the money orders were themselves replete with bases for legitimate inferences of his guilty knowledge. For the appellant testified in explanation of his possession of Exhibits H and T that on January 13, 1960 a stranger, who introduced himself as "Joseph Russo," accompanied by a young woman in an automobile carrying Florida plates drove into his auto mart in Wolcott, Connecticut, to buy a used car and selected a 1953 Pontiac which appellant had bought from another secondhand dealer a month before for $75 and thereafter had improved at an expenditure of $190. This Pontiac Russo purchased for $350 plus tax and title certificate. In payment Russo tendered the four money orders, each for $100, in evidence as Exhibits H and T. On one of these Russo's name appeared as payee and on the others as an endorser. All appeared to be in all respects valid and regular. Sahadi accepted them, giving Russo change of about $30 to close the transaction. Russo in his presence signed an application for a motor vehicle license for which, while Russo waited, appellant, by dispatching an assistant to the Waterbury Motor Vehicle office, obtained license plates which were affixed to the Pontiac which Russo drove away never to be seen by the appellant again. Such was the appellant's explanation of his possession. But through another witness it appeared that the Pontiac was abandoned in Hartford, Conn., within a week or two.

It is true that Sahadi's story was not in material conflict with the pre-trial statement that he had volunteered to a Postal Inspector. It is also true that there was documentary evidence of the appellant's purchase of the Pontiac; his sale of it to "Joseph Russo" and its registration in the Waterbury Motor Vehicle office on January 13, 1960 over the purported signature of Joseph Russo. But beyond this the appellant's explanation as to the transaction was wholly without corroboration from the appellant's books or from his two mechanics. Only the appellant testified to any investment in the Pontiac beyond the $75 purchase price, to the $30 in change given when the four money orders were received from the stranger "Russo" arriving in the Florida auto, and to the trip to the Motor Vehicle office to obtain the plates. True, there was documentary evidence of the purchase, sale, and registration of the Pontiac. But Sahadi's testimony in so far as corroborated does not bar the possibility that the Pontiac was used as a $75 cloak to give an appearance of *bona fides* to the negotiation of $400 in spurious money orders. The jury may have thought it more reasonable to believe that the four orders had been handed to him directly by Di Pietroantonio than that a stranger from Florida should have found his way to Sahadi's mart in a rural Connecticut community to purchase a secondhand car never before seen.

It is reasonable to infer that if Sahadi's explanation were true the absent corroboration could have been easily supplied. He had only two full-time employees. Yet neither was offered to corroborate work or material expended on the Pontiac or the trip to the Motor Vehicle office. Sahadi testified that the money orders negotiated to Tommone and Kareb had been received by his firm in his absence in the ordinary course of business. But no employee was produced to corroborate the fact. As he testified that he did about $15,000 worth of business a month it is reasonable to infer that he kept books. Yet no firm records were offered to corroborate the expenditures on the Pontiac or the receipt of any of the six money orders.

Of the money orders which Sahadi says he received from Joseph Russo, three were endorsed to Joseph Russo and one, Exhibit H, was payable to and endorsed by John Russo. Yet Sahadi required no identification of the Joseph Russo with whom he was doing business or his endorsement in his presence or explanation of his connection with John Russo. He made no note of the license

number of the auto in which Russo arrived and no verification of Russo's purported Waterbury address. Although the four orders allegedly received from Russo, and two others allegedly received by his employees in the course of his business, had all according to the date stamp thereon been issued in the Little River Station in Miami, Florida within the week, he sought no explanation for their almost simultaneous appearance at his place of business in a rural Connecticut community.

█ Moreover, there was evidence that Sahadi, when first asked by the Postal Inspector if he had not negotiated two other money orders in addition to those received from Russo, one to Tommone (Exhibit G) and one to Kareb (Exhibit F), denied even knowing these two persons. But later on trial after they testified that they had received the orders from him, he conceded that he had known them for many years. To be sure, he then contradicted the Inspector's account of his earlier denial, but we must assume that the jury believed the Inspector. His false denial of negotiating two money orders bearing the stamp of the "Little River Sta. Miami, Florida" and dated in early January 1960 is itself indicative of guilty knowledge as to the similar orders on which he was convicted. United States v. Kelley, 7 Cir., 186 F.2d 598, 602–603, certiorari denied 341 U.S. 954, 71 S.Ct. 1004, 95 L.Ed. 1375; Carrullo v. United States, 8 Cir., 184 F.2d 743. Cf. Sapir v. United States, 2 Cir., 174 F. 219.

█ The testimony of the Postal Inspector of Sahadi's false denials and the speedy abandonment of the car in Hartford tended to show that Sahadi's explanations of his possession of the money orders were fabrications. A fabricated explanation naturally and properly gives rise to an inference of guilty knowledge. Seaman v. United States, 5 Cir., 96 F.2d 732. And similar inferences arise from the failure more fully to corroborate his explanations. It has long been the law that when an accused voluntarily takes the stand his failure to explain incriminating circumstances is subject to the inferences to be naturally drawn therefrom. See Caminetti v. United States, 242 U.S. 470, 494, 37 S.Ct. 192, 61 L.Ed. 442; Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704. Compare Sheehan v. Goriansky, 317 Mass. 10, 56 N.E.2d 883, 886. His endorsement of Exhibits H and T does not of itself negate his guilty knowledge. See Anderson v. United States, 6 Cir., 270 F.2d 124. The jury might properly have thought that the endorsements had been made to add to the semblance of *bona fides* cloaking the sale of the Pontiac. We conclude that the finding of guilty knowledge was sufficiently supported.

██ Error is also predicated on the denial of a motion for a separate trial on the conspiracy count, the appellant's contention being that the denial of severance here was an abuse of discretion. This contention is utterly without substance. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278. Cf. Fed.Rules Crim.Proc. 8, 13 and 14, 18 U.S.C. Equally untenable is appellant's claim that it was error to admit, subject to later connection, evidence of alleged overt acts before the conspiratorial agreement had been established. In his charge the judge cautioned the jury that all the evidence on the conspiracy charge had been stricken and repeatedly instructed the jury to disregard it.

█ Lastly, it is claimed that the counts on which appellant was found guilty failed to state an offense against the United States. The claim is based on the fact that the indictment charges that the appellant "caused to be presented to an officer of the United States" while the statute penalizes whoever "presents to" such an officer. As to this element of the offense, the judge instructed the jury as to 18 U.S.C. § 2 and that it would sufficiently support a verdict of guilty if it were found that the appellant "caused" the money orders to be presented by another and thereby procured the completion of the crime. That the indictment did not expressly charge the appel-

lant under 18 U.S.C. § 2 was not a fatal defect, as the appellant seems to think. There is no rule of pleading which requires that a federal indictment state whether the offense charged was as to one or more of its various elements committed by the defendant directly or indirectly through another. In his charge the judge made it unmistakably plain that to convict, the jury must find that the government had proved beyond a reasonable doubt that the money orders involved had been illegally issued and that "Sahadi knew that the money \* \* \* orders in question were unlawfully issued" when he negotiated them and thereby "caused the money orders in question to be presented." This ground of appeal also has no merit.

Affirmed.