by that section, for it only authorized the referee to take proof and report the same with his opinion thereon.

The question of the power of the court to order a compulsory reference under these sections and the form of reference has been passed upon by the Court of Appeals in Doyle v. M. E. R. Co., 136 N. Y. 505, 32 N. E. 1008, and again in Standard Fashion Co. v. Siegel-Cooper Co., 44 App. Div. 121, 60 N. Y. Supp. 739, and we regard these cases decisive upon that question and decisive of this case.

The judgment should be reversed, and a new trial granted, with costs to abide the event.   All concur.

(112 App. Div. 698)

WITMER v. BUFFALO & N. F. ELECTRIC LIGHT & POWER CO.

(Supreme Court, Appellate Division, Fourth Department.   May 2, 1906.)

1. ELECTRICITY—NEGLIGENCE—DEATH—QUESTION FOR JURY.

   In an action for death caused by electricity, evidence *held* to present a question for the jury whether the electric company was sufficiently careful in maintaining its wires and system to make them safe for a user of electric lights on its lines.

2. SAME—INSTRUCTIONS.

   In an action for death caused by electricity, an instruction that the electric company was required to use reasonable care in constructing and maintaining its system, and to prevent a secondary system, used for lighting houses, from being charged with a high voltage current, was sufficiently favorable to the company.

3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

   In an action for death caused by an electric current from wires used in lighting a house, where the usual voltage was less than enough to be dangerous to life, whether the deceased was guilty of contributory negligence in handling the wire was a question for the jury.

   [Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Electricity, § 11.]

4. SAME—PROVISION IN CONTRACT.

   A provision in a contract for electric lighting that the company should not be liable in any event for damage to person or property from the use of the light does not relieve the company from liability for death caused by its negligence.

5. EVIDENCE—RES GESTÆ—DECLARATIONS.

   In an action for death caused by an electric current from the wire used for the electric lighting of a house, a statement of the deceased just prior to the accident causing his death, in response to a warning to be careful, that there was no danger, as a sufficient current could not get into the house, was competent as a part of the res gestæ.

   [Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 345, 346.]

Appeal from Trial Term, Niagara County.

Action by Mary L. Witmer, as administratrix of Loren T. Witmer, against the Buffalo & Niagara Falls Electric Light & Power Company. From a judgment in favor of plaintiff, defendant appeals.   Affirmed.

The action is brought to recover damages for the death of plaintiff's husband through negligence of the defendant, resulting from his coming in contact with a highly overcharged wire in the home of deceased at Niagara Falls on the 27th day of September, 1903. The claim of the plaintiff is that the wires used for supplying light to the deceased had become overcharged through the defendant's negligence, and the deceased, being unaware of this

dangerous condition; took hold of an extension cord, at the end of which was an electric light bulb used for lighting the cellar or basement of the house, and was killed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Maurice C. Spratt, for appellant.

Fred M. Ackerson, for respondent.

KRUSE, J. That Loren T. Witmer came to his death by coming in contact with a wire overcharged with a deadly current of electricity is scarcely disputed. Neither is the fact seriously controverted that ordinarily the current was not deadly, or even dangerous. The incandescent electric lighting was used in this house. The incandescent circuit voltage was about 2,200, carried on two primary wires, which distributed the electricity about the city. Transformers were placed in various parts of the city, which reduced or stepped it down, as it is stated, from a voltage of 2,200 to about 106, and at this reduced voltage it was used for lighting the houses and other places. Less than 500 voltage is, under ordinary circumstances, not dangerous to human life, so that, if the deceased came to his death by coming in contact with a current of electricity, it is reasonably certain that the current exceeded the usual house-lighting voltage.

No claim is made that the defendant is liable for the wiring in the house, for that was not done by the defendant. The sole claim of the plaintiff is that the defendant, through its want of care and attention in respect to the matters which will be adverted to a little later, was responsible and became liable for the consequences resulting from the overcharged condition of the wires in this house, which caused the death of the deceased, and that question is the serious question presented by this appeal.

It appears that on the early morning of September 27, 1903, between 2 and 3 o'clock in the morning, an unusual buzzing noise was heard. The deceased was awakened by his wife, and evidently determined that the disturbance was due to electricity, for he went upstairs, and turned off the entrance switch connection. His wife warned him to be careful, and he replied that there was no danger; that there couldn't enough come in to hurt anybody; that it would blow out the transformer before it would come in. After turning off the switch, they proceeded on their way downstairs, and the buzzing noise came on again. The cellar indicator in the dining room showed that there was light in the cellar. He started down cellar. The noise continued about a second. It had ceased before he opened the cellar door. On his way down he struck a match. The cellar was usually lighted by an electric bulb attached to the end of a cord. The cord was about seven or eight feet long, and when not in use was hung up. He took hold of the cord, lifted it towards him; the match was going out. His wife said, "I will go and get a light for you." After she had turned and gone for the light, the buzzing sound came on again, the bulb lighted up, and at the same time the deceased groaned and fell. She was at the head of the cellar stairs when she saw him take hold of the wire. His wife and sister picked him up, and put him in a sitting posi-

tion.   His wife went for a doctor, and at her return the deceased had been carried upstairs by his father and his sister; they were working over him, but he was evidently dead, for they were unable to revive him.

The hight tension wire of the arc system carried a voltage of 7,-500.   That this current was communicated in some measure and by some means to the wires of the residence of the deceased is reasonably certain; indeed, both parties so claim.   The serious question is, whethei it was done, as is claimed on behalf of the plaintiff, by the proximity of the arc and incandescent wires and their sagging, or by the limbs of a tree through which the two wires passed connecting them, thus surcharging the incandescent wire, or both; or whether, as is claimed on behalf of the defendant, the fire alarm wire fell upon the high tension arc wire, conveying the current in some manner to the telephone wire, and then from the telephone wire to the incandescent wire, and eventually finding its way into the home of the deceased.   Jf the latter, then under the rule of law adopted by the learned trial court a recovery against the defendant cannot be sustained, for such was the charge to the jury.   It seems reasonably certain that the fire alarm wire fell upon the high tension arc light wire, or in some way the current from the high tension wire was communicated to the fire alarm wire, but it is still open to doubt as to whether this overcharged current was communicated to the telephone wire, and from the latter to the incandescent wire, and from thence into this house.   It was a stormy night, and high winds prevailed.   The alternate buzzing and the light coming on momentarily and then disappearing would seem to indicate that there was an alternating current transmitted to the wires in this house.   The defendant contends that this same condition was apparent on the fire alarm system, as testified to by the person in charge, at about the same time that the accident occurred; thus lending credence to the claim that the current was not only alternating, but may well have been caused by the swaying motion of the wires, thus causing intermittent contact, or proximity of wires sufficiently close to communicate the current from the high to the low tension wires.   The defendant contends that this intermittent current was produced by the swaying of the telephone wire by the wind, while the plaintiff contends that it was the swaying motion of the other wires and the intermittent contact between the two wires communicated by the limbs of the trees which were being swayed by the wind.   Witnesses were called upon both sides testifying to what they observed before and after the accident with reference to conditions in the trees and on the wires and transformers, and other conditions which might throw some light upon the question.

Without going into the details of the testimony, we think the evidence presented a fair question of fact for the jury, and finding thereon by them favorable to the plaintiff's claim afforded the grounds for the further finding that the defendant was not sufficiently careful in maintaining its wires and system, and did not have that regard for the safety of human life that the law requires shall be observed in handling so dangerous an agent as electricity.   The rule, as charged by the learned trial court, that the defendant was required to use reasonable care in

constructing and maintaining its system, and to prevent the secondary system being charged with a high voltage current, was as favorable to the defendant as it could ask. Nor can it be said that the evidence showed that the deceased was not reasonably careful. It is true the extension cord may have rested on the cellar bottom, and the insulation so worn that it afforded an easy way for the current to reach the ground, and that the deceased knew that, and was reasonably familiar with the dangers of electric current; but it must be remembered that ordinarily the house wires did not carry a sufficiently strong current to make it dangerous, so that from the lack of insulation or for any other reason would it be dangerous to take hold of this extension cord. Under all the circumstances, it was a question of fact for the jury to determine whether the deceased was free from contributory negligence.

The contract under which the defendant supplied light to the deceased contained the following provision:

"In case the supply of light should fail, whether from natural causes or accident in any way, this company shall not be liable for damage by reason of such failure, nor shall it be liable in any event for damage to person or property arising, accruing, or resulting from the use of the light."

It is contended by the defendant that this provision exonerates the defendant from liability for damages, even if caused through its own negligence. We cannot assent to this claim. Contracts of this character, to warrant such a construction respecting the negligence of a party in omitting a plain legal duty, must do so in terms and expressly provide to exempt from such liability. Nicholas v. N. Y. C. & H. R. R. R., 89 N. Y. 370; Jennings v. G. T. & G. Co., 127 N. Y. 438, 28 N. E. 394; Rathbone v. N. Y. C. & H. R. R., 140 N. Y. 48, 51, 35 N. E. 418.

As regards the statements made by the deceased to his wife when the switch was being turned off, stating that there was no danger, that a sufficient current could not get into the house, in response to her statement asking him to be careful, we think they constitute a part of the res gestæ, and were competent. Waldele v. N. Y. C. & H. R. R. Co., 95 N. Y. 274, 279, 47 Am. Rep. 41; Landon v. P. A. Ins. Co., 43 App. Div. 487, 60 N. Y. Supp. 188.

We conclude that the verdict of the jury should not be disturbed, and that there are no errors requiring a new trial.

The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur, except NASH, J., not voting.