Gene **DOWNING**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21797.

United States Court of Appeals Fifth Circuit.

July 12, 1965.

Certiorari Denied Nov. 8, 1965.

See 86 S.Ct. 235.

H. G. Bill Dickey, Tulsa, Okl., Mark F. Howell, El Paso, Tex., for appellant.

Mario J. Martinez, H. M. Raney, Asst. U. S. Attys., El Paso, Tex., Ernest Morgan, U. S. Atty., Reese L. Harrison, Jr., Asst. U. S. Atty., Western District of Texas, San Antonio, Tex., for appellee.

Before BROWN and GEWIN, Circuit Judges, and KILKENNY,* District Judge.

GEWIN, Circuit Judge:

Appellant Gene Downing was tried by a jury and convicted in the United States District Court for the Western District of Texas on a ten count indictment, the first nine counts of which alleged that he and two other named defendants unlawfully transported and caused to be transported in interstate commerce from El Paso, Texas, to San Francisco, California, certain falsely made and forged Bank of America Travelers Cheques in violation of Title 18 U.S.C.A. 2314. The tenth count charged a conspiracy in the Western District of Texas and at other places outside that district to unlawfully transport and cause to be transported in interstate commerce such falsely made and forged cheques in violation of Title 18 U.S.C.A. 371. The indictment alleged twelve overt acts in furtherance of the conspiracy. Although some of the overt acts involved Downing, none charged him with having committed any specific act in the Western District of Texas.

Downing was granted a severance and tried separately. The other two defendants, Burns Trusty, Jr. and Robert Stephen Pickard, pleaded guilty to the conspiracy count and were sentenced, and

* Of the District of Oregon, sitting by designation.

the latter testified for the Government. Downing was convicted on all counts and sentenced to serve five years on each, the sentences to run concurrently. His motion for a new trial and for judgment of acquittal was overruled.

The evidence shows that on January 30, 1962, the Bank of America in San Francisco issued a number of blank travelers cheques to the First National Bank of Nash, Oklahoma, which was burglarized on February 23, 1962. Bank of America Travelers Cheques totaling approximately $6,900 were stolen along with certain other securities. The travelers cheques later appeared beneath the back seat of an automobile at the home of Downing, a used car dealer near Tulsa, Oklahoma. There on or about March 2, 1962, all three defendants discussed the matter of cashing these checks. It was agreed that Trusty and Pickard would forge and negotiate them, and the proceeds remaining after their expenses had been paid would be divided equally among the three. Trusty "purchased" a used car from Downing for the purpose of transporting the cheques in interstate commerce.[1] He also gave Trusty some money "to get out of Oklahoma." Trusty and Pickard took the blank cheques from the car located at Downing's home near Tulsa, drove to Arkansas where they stole an Oklahoma license plate and placed it on the car they had "purchased," forged some of the cheques, and then proceeded to Louisiana, Alabama, and Florida, cashing them along the way. In Mobile they wired $500 to Downing in Tulsa.[2] Upon their return to Tulsa, March 9, the three split the remaining proceeds at Downing's house, and returned to him the uncashed cheques.

About March 12, Downing instructed Trusty and Pickard to go West with the remainder of the cheques, and wire him money as they went along. They stole another license plate at Sayre, Oklahoma,

and cashed more forged cheques en route to Amarillo, Texas, New Mexico, and El Paso. They cashed a total of $600 in cheques at motor hotels in El Paso. At the trial Pickard positively identified the cheques which he and Trusty had obtained from Downing, forged, and cashed in El Paso. It was shown by other evidence that these were the cheques which were stolen from the Oklahoma bank. They were ultimately presented to and paid by the issuing bank in San Francisco through regular banking channels. On March 15, Trusty wired $500 from El Paso to Downing in Oklahoma. The two then drove to New Mexico, Arizona, California, and Nevada before returning to Tulsa about March 21, 1962, where the three again split the proceeds.

Western Union records corroborated the payments by wire, and the records from motels in Mobile and El Paso corroborated the testimony of Pickard as to places visited, the dates, and some of the aliases used. The testimony of a motel auditor and the records of an El Paso bank established that the cheques cashed at a motel in El Paso by defendants were deposited with it and duly forwarded to the issuing bank in San Francisco. Latent fingerprints on some of the cheques were identified by FBI agents as those of Pickard and Trusty.

Downing contends that his conviction should be set aside because (1) the trial court did not have jurisdiction; (2) the indictment did not charge him with the commission of a crime; (3) the prosecution should have furnished a bill of particulars and a list of its witnesses; (4) the court admitted improper evidence; (5) the judge did not handle the jury properly; (6) the court erred in denying the motion for an instructed verdict and judgment of acquittal. These contentions will be discussed in the order listed.

▪ Throughout the trial, Downing persistently challenged the jurisdiction

---

1. Downing ostensibly sold the car to Trusty and gave him a sales contract so that "if we got picked up or anything, they couldn't trace it back to anything. . . ."

2. The wire was addressed to an employee or "buddy" of Downing, but it is clear from Pickard's testimony that the proceeds were intended for Downing.

of the trial court. His contentions at trial and here relate more to the subject of venue than jurisdiction. There is no doubt that the Texas federal district court has jurisdiction to try a case of this character if venue is proper.[3] Downing insists that since the evidence shows that he was never in the Western District of Texas and did not communicate with anyone there during the period covered by the indictment, the court had no jurisdiction over him. Protesting vigorously and ardently contending that he is innocent of all crime, he asserts that he could be guilty only of a conspiracy and that since the conspiracy was formed in Oklahoma, he should be tried there rather than in Texas. Furthermore, he objects to the order and sequence in which the evidence was presented. It is asserted that the Government was not authorized to introduce evidence in proof of the substantive offenses alleged in counts 1 through 9 until it was first proved that he was guilty of the conspiracy charged in count 10. Downing urges that since all of the evidence shows the conspiracy to have been formed in Oklahoma, the Texas court should not be permitted to hear evidence in support of any of the counts. To permit such evidence would deprive him of his right under the 6th amendment to a trial "by an impartial jury of the state and district wherein the crime shall have been committed."

◼ The contentions of the appellant are foreclosed both by statute, 18 U.S.C.A. § 3237,[4] and by court decisions. A conspiracy may be prosecuted in the district where it was formed or in any district in which an overt act was committed in furtherance of its objects. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); Finley v. United States (5 Cir. 1959) 271 F.2d 777; Ladner v. United States (5 Cir. 1948) 168 F.2d 771; Chapman et al. v. United States (5 Cir. 1926) 10 F.2d 124. The place where the conspiracy was formed is immaterial if at least one of the overt acts alleged and proved took place within the district where the defendant is tried. Crosby v. United States (5 Cir. 1956) 231 F.2d 679. It is not essential that the defendant ever enter the state or district of trial. Davis v. United States (5 Cir. 1945) 148 F.2d 203; United States ex rel. Kranz v. Humphrey (3 Cir. 1949) 174 F.2d 741. The order and sequence of proof is another matter which will be discussed infra. Here it is sufficient to state that Downing was bound by the unlawful acts and statements of his co-conspirators in furtherance of the conspiracy, although such acts and statements took place in Texas out of his presence. Once the conspiracy was established, there was a partnership in crime and the partners acted for each other in carrying it forward. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1945). There was ample evidence of overt acts committed by Downing's co-conspirators within the Western District of Texas. Not only is he subject to prosecution in the Western District of Texas for any criminal conduct of his co-conspirators committed there in furtherance of the conspiracy under the rationale of Pinkerton, he is also subject to such

---

3. Jurisdiction and venue were indiscriminately argued on the several motions seeking dismissal of the indictment, a bill of particulars, a directed verdict of acquittal, new trial, judgment of acquittal, and upon objections to the admissibility of certain evidence.

4. Section 3237 provides as follows:
 "§ 3237. Offenses begun in one district and completed in another
 "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
 "Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves. June 25, 1948, c. 645, 62 Stat. 826."

prosecution there for such conduct on the theory that he was an aider and abettor. 18 U.S.C.A. § 2; Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1952); Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

Downing's attack on the indictment consists of a short motion to dismiss which contains the simple assertion that the indictment fails to allege that the defendant committed any crime against the United States. His brief fails to supplement his motion. It does not deal with the sufficiency of the allegations of the indictment, but contains only loose assertions relating to the sufficiency of the proof.[5] An indictment which follows the language of the statute is ordinarily sufficient unless the statute omits an essential element of the offense. The indictment under which Downing was tried substantially follows the language of the statutes involved and each count contains the official citation of the statute which the defendant is alleged to have violated. We consider it sufficient. F.R.Crim.P. 7(c); Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927); Babb v. United States (5 Cir. 1955) 218 F.2d 538; Johnson v. United States (5 Cir. 1953) 207 F.2d 314; Robertson v. United States (5 Cir. 1948) 168 F.2d 294; Norris v. United States (5 Cir. 1946) 152 F.2d 808, cert. denied, 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623.

The motion to require the Government to furnish a list of the names and addresses of its witnesses assigned no grounds. It contained no allegations that such a list would be material to the preparation of the defense.

When the court called upon Downing's counsel to present the motion, no argument was made and no reasons were given to the court in support of it. Counsel admitted that the granting of the motion was within the discretion of the trial court.[6] There was no abuse of discretion. Rule 16 F.R.Crim.P.; Dean v. United States (8 Cir. 1959) 265 F.2d 544; Yeargain v. United States (9 Cir. 1963) 314 F.2d 881. See also Barron & Holtzoff, Fed. Practice & Procedure (Wright ed.) V.4, § 2032 (Supp. 1964).

A motion for a bill of particulars is addressed to the sound discretion of the trial court and may not be used for the purpose of obtaining a detailed disclosure of the Government's evidence in advance of trial. Downing was sufficiently informed of the nature of the charges against him to permit adequate preparation of his defense. There is no showing that he was surprised [7] or that any of his substantial rights were prejudiced by the denial of his motion. The action of the trial court will not be disturbed in the absence of a showing of prejudice or an abuse of discretion. Rule 7(f) F.R.Crim.P.; Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927); Joseph v. United States (5 Cir. 1965) 343 F.2d 755; Robertson v. United States (5 Cir. 1959) 263 F.2d 872; Johnson v. United States (5 Cir. 1953) 207 F.2d 314.

With respect to the evidence introduced, Downing makes two complaints. First, he objects to the order and sequence of the proof presented. Second, he complains that much of the evidence was hearsay, involved other crimes and other persons, and did not relate to the charges against him. A con-

---

5. Downing's brief on this point concludes with the following statement:
 "There is absolutely no proof of an overt act in furtherance of this conspiracy committed in the State of Oklahoma."

6. "THE COURT: All right. What about your motion for a list of witnesses?
 "MR. DICKEY: Well, Your Honor, I think that is a discretionary thing with the Court. I filed it, and I have not been furnished a list. I don't think I need to pursue that."

7. Although Downing's counsel expressed surprise when certain evidence was introduced, we do not feel that his assertions were justified. The evidence constituted precise proof of the charges contained in the indictment.

spiracy to commit a crime is a separate and distinct crime from the substantive offense. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1945). It is also true that the evidence to establish the existence of a general conspiracy requires proof that an act was committed in furtherance of the conspiracy before the conspiracy is punishable.[8] Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).

 When a defendant is charged with the commission of substantive offenses and also with conspiracy, problems are presented to both the prosecution and the defendant as to the order and sequence of proof. Ideally, it is always more orderly to present sufficient evidence to establish the prima facie existence of the conspiracy and to identify the conspirators before presenting detailed evidence as to the substantive offenses and the acts and declarations of the conspirators which were made during the period of the existence of the conspiracy in the achievement of its objects. Clearly, in such circumstances, acts and declarations of each of the conspirators in furtherance of the conspiracy are admissible against all of them. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Hansen v. United States (9 Cir. 1963) 326 F.2d 152; Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790, 799 (1949), (See concurring opinion by Justice Jackson). As a practical matter, the proof is often "sprawling" and at certain stages of the trial may appear to present a hodgepodge of acts and statements by various persons. In the final analysis, however, it is always necessary that the evidence be connected and enmeshed so as to present a logical sequence of evidence linking the defendant with the

charges against him. The very nature of such cases requires that broad discretion be vested in the trial court with respect to the order of proof. Strauss v. United States (5 Cir. 1963) 311 F.2d 926; Lucas v. United States (8 Cir. 1965) 343 F. 2d 1.

 In the instant case the record convinces us that the prosecution presented its evidence in a most orderly fashion. The prosecution first introduced evidence of the existence of the conspiracy in Oklahoma and then presented proof of the subsequent commission of overt acts in the Western District of Texas in accordance with well-laid plans. The omnibus and vague specifications of error do not pinpoint the particular items of evidence considered objectionable. However, we have examined the entire record carefully and find no substantial error in the admission of evidence which would prejudice the rights of the defendant. The evidence presented as to the various acts, statements, and conduct of the conspirators was clearly admissible. Pinkerton v. United States, supra; Pereira v. United States, supra; Roe v. United States (5 Cir. 1963) 316 F.2d 617. The hearsay rule does not apply. Krulewitch v. United States, supra; Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

Downing asserts that the trial court committed error in the denial of his motion for a new trial because (1) the court improperly handled the jury during its deliberations, and (2) his right to be present at each stage of the trial as provided by Rule 43, F.R.Crim.P., was violated. It is contended that the jury recessed for lunch [9] and reconvened while

---

**8.** Title 18 U.S.C.A. 371 provides in part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or

imprisoned not more than five years, or both."

**9.** With respect to the jury going to lunch as contended, there is nothing in the record except this oral assertion by counsel: " * * * When the jury went out in this case somewhere between 11:30 and twelve o'clock in the daytime, at noon,

he was not present; and further, that the court allowed the exhibits to be delivered to the jury out of his presence. Immediately prior to retirement the court stated to the jury that there were a number of exhibits [10] in evidence and that they had a right to examine any of them if they wished to do so. They were told that any exhibits they desired to consider would be delivered to them. The court further stated that if the jury wished to have lunch, they should notify the officer in charge. The jury was carefully admonished not to discuss the case with outsiders or outside the confines of the jury room, and not to permit anyone to discuss it in their presence.[11] Downing and his counsel were present when these instructions were given. There was no objection to such instruction and the court's attention was not called to any possible irregularity during the deliberations of the jury. These questions were raised for the first time in the motion for a new trial.

Downing makes no proof by affidavits or otherwise to support the allegations of his motion. The record does not show that the jury ever returned to the courtroom before it returned to announce its verdict. There must be compliance with Rule 43, F.R.Crim.P., but we are unable to find any deviation from it in this case. In any event, even if the factual allegations of the motion are taken as true, they fail to show any reasonably substantial relationship to Downing's opportunity to defend himself. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); Stein v. United States (9 Cir. 1962) 313 F.2d 518. The record does not show that the court ever communicated with the jury during its deliberations or that any exhibits were in fact delivered to it. The on'y support for such allegations was the oral statement of Downing's counsel after the motion for new trial had been overruled and sentence imposed: "Sometime later we saw Your Honor's bailiff with *apparently* the exhibits in the case walking past us in the hall, and go in the elevator, *supposedly* or *apparently* taking exhibits to the jury at their request." (Emphasis supplied.) Assuming that the bailiff did deliver exhibits to the jury, there is no showing that Downing's rights were prejudiced. All of the exhibits offered by the prosecution were admitted into evidence except a ledger sheet from a motel where Downing's confederates stayed. Of course, the jury was present when the exhibits were identified and introduced into evidence. The jury got what they had already been given. See Outlaw v. United States (5 Cir. 1936) 81 F.2d 805, cert. denied 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389. Even if the jury inadvertently received the one document which was not admitted into evidence, that fact seems inconsequential. United States v. Compagna (2 Cir. 1944) 146 F.2d 524, cert. denied 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422. No error was committed in handling the jury.

In considering the several motions of Downing to dismiss the prosecution, for judgment of acquittal, and for an instructed verdict, the verdict of guilty as found must be sustained if, taking the view most favorable to the Government, there is substantial evidence to support it. See Glasser v. United States, supra. The evidence was not only sufficient to sustain the verdict of guilty, but it was

we waited outside the door, and sometime about 12:30 the Clerk advised us that you had sent the jury to lunch, and we were not present when they were sent to lunch and told to be back at one o'clock. When we came back at one o'clock, we were then told the jury had been reconvened. We were not present. * * *"

10. Numerous documentary exhibits were admitted on behalf of the Government, consisting of the forged cheques cashed in El Paso, Western Union money orders, motel registration ·cards, fingerprint charts, and other papers.

11. The record discloses a similar admonition when the jury was first impaneled to confine their deliberations only to the evidence introduced on the witness stand, and not to rely upon any other source of information.

strong, positive, clear and convincing. No error was committed in overruling the motions.

We have given full consideration to all of Downing's contentions and are convinced that he received a fair, just, and impartial trial, and that the evidence against him was strong, cogent and clearly established his guilt. The judgment is

Affirmed.