UNITED STATES of America, Appellee,

v.

Josefa RODRIGUEZ, Defendant-Appellant.

No. 795, Docket 72–1169.

United States Court of Appeals, Second Circuit.

Argued May 19, 1972.

Decided July 6, 1972.

Sheila M. Ginsberg, New York City (Robert Kasanof and William E. Hellerstein, The Legal Aid Society, New York City), for defendant-appellant.

Walter S. Rowland, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., and William B. Gray, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Josefa Rodriguez appeals from a judgment convicting her of uttering and causing to be uttered a forged $89.20 Social Security check in violation of 18 U.S.C. § 495. Judgment on this second count of a two count indictment was entered after a three day jury trial in the District Court. The first count of the indictment charging appellant with having forged the endorsement of the payee on the check was dismissed for lack of venue before the case was submitted to the jury. Appellant was sentenced to a one day probationary term.

The sole issue on this appeal is whether venue in the Southern District of New York[1] was proper with respect to the second count of the indictment.

## I. The Facts

Appellant, a Dominican national, was arrested at her residence in the Bronx,

---

1. The Southern District of New York encompasses the counties of Bronx and New York (Manhattan) and the Eastern District of New York includes Kings (Brooklyn) county. 28 U.S.C. § 112.

New York, on August 7, 1969. The arrest was the result of an investigation regarding a Social Security check which the payee had reported stolen. At the time of her arrest, appellant gave both written and oral statements concerning her involvement with the check.

According to her oral statement, she needed money to pay for visas for her two children and initially borrowed $80.-00 from a Mrs. Gloria Pena for this purpose. Several days later when Mrs. Pena asked for repayment of the loan, appellant did not have the money available. However she told Mrs. Pena that she would make an effort to obtain the money as soon as possible. Appellant then requested and received a loan from a man named "Polidor." This loan, according to the oral statement, was in the form of "his" unsigned "income tax check." (Tr. p. 37).[2] This check was then used to repay Mrs. Pena.

Appellant, in her oral statement, identified the "Polidor" who had given her the check as a friend who lived at 2902 Cortelyou Road, Brooklyn, New York. She also stated her belief that "Polidor" had been deported to Santo Domingo by the Immigration Department.

Appellant's written statement was essentially similar to her oral statement. As in the oral statement, the written statement indicates that after she obtained "Polidor's" check, Mrs. Pena came to her "house" for repayment of the loan. Appellant did not specify and the investigating officers never asked whether the "house" referred to was in the Bronx or whether the reference was to a prior residence.

In addition to repeating the essentials of the oral statement, the written statement expanded upon appellant's explanation of how the check was negotiated. According to the written statement, Mrs. Pena, upon her arrival at appellant's "house", demanded immediate repayment. Appellant explained that it was necessary to wait for "Polidor" to cash the check because it had not been

endorsed. Appellant offered ·to meet Mrs. Pena in Manhattan with the money after the check was cashed. Mrs. Pena found this arrangement unsatisfactory so appellant signed the check in the name of the payee and handed it to Mrs. Pena. At this time appellant was informed that the check was to be deposited in a bank.

Both the oral and written statements were introduced by the Government during the trial. The Social Security check which carried the endorsements of "Polidor Cohen" and Gloria Pena was also introduced in evidence. A bank stamp on the check indicated that it had been deposited in a Manhattan bank.

In addition to the statements and the check, the Government offered the testimony of Fortunado Cohen and his father Polidor Cohen. They lived together at 2902 Cortelyou Road, Brooklyn, New York, at all times relevant to the proceedings. According to their testimony, Polidor Cohen's Social Security check was stolen from his mail box in May of 1968. The loss was reported and a replacement check was issued. Polidor Cohen, 75 years old and blind, testified that he never gave his check to a woman named Josefa Rodriguez. His son testified that he never knew of anyone other than his father who had the name Polidor Cohen.

The Government also offered evidence establishing that appellant, during an investigative interview prior to her arrest, denied signing the check though she admitted using the check to obtain visas for her children. At that time she also stated that she had received the check from her friend "Polidor." During this interview she agreed to provide handwriting specimens. Upon examination, these specimens proved to be similar to the signature of the payee on the check. Appellant was informed of this positive identification at the time of her arrest. Subsequently, in her oral and written statements, she admitted signing the check.

2. Tr. refers to the trial transcript.

At the close of the Government's case, defense counsel moved to dismiss the indictment for failure of the Government to establish venue. The motion was denied.

Appellant then testified in her own behalf. She stated that in May of 1968 she lived in an apartment at 2902 Cortelyou Road in Brooklyn. Her testimony was, in substance, similar to the statements given at the time of her arrest. In addition, however, in answer to an inquiry by the court, appellant stated that Mrs. Pena told her that she was going to meet her husband at 42nd Street and Times Square and was then going to deposit the check in a Manhattan bank. After this witness was excused, the defense rested.

Before submitting the case to the jury, the court granted a defense motion to dismiss the first count of the indictment on the Government's failure to offer sufficient evidence on the question of venue. Based on all the evidence, the court found that Josefa Rodriguez had signed the check and given it to Mrs. Pena in Brooklyn.

A similar motion to dismiss the second count of the indictment was denied. The court ruled that proof of venue in the Southern District of New York was sufficient on the theory that appellant could be considered as an aider and abettor of Mrs. Pena who knowingly uttered the forged check in Manhattan. Alternatively, the court ruled that venue was proper because the offense of uttering as charged in the indictment could be considered a continuing offense within the meaning of 18 U.S.C. § 3237.[3] Under this theory, the crime of uttering began in Brooklyn where the check was signed and passed to Gloria Pena and continued through the cashing of the check by Gloria Pena in the Manhattan bank. Defense counsel excepted to the court's ruling.

Both theories of venue were submitted to the jury. At issue is the question of whether either one or both of these theories is incorrect.

## II. Questions of Law

We must first consider the Government's contention that any question relating to the jury charge is not properly before this court because defense counsel failed to enter a proper objection to the charge as given. While the Government is correct in noting that no specific objection was made to the jury charge with respect to the question of venue, this fact, under the circumstances of this case, is not determinative.

■ The entire trial lasted three days. On the first day, after the prosecution had presented its case, defense counsel moved to dismiss the indictment for lack of venue. During argument on this motion, the question of venue as regards the second count of the indictment was briefly discussed. (Tr. pp. 66–67). The motion was subsequently denied. It was renewed that afternoon, after the defense rested. Shortly thereafter, court was adjourned. The following morning, argument on the motion continued. Both theories of venue as regards the second count of the indictment were offered by the Government and were discussed at length. (Tr. pp. 124–26, 131–37, 140–42). The court reserved decision. On the third day, the court dened the motion to dismiss the second count of the indictment because both theories of venue were found to be proper. (Tr. pp. 149–50). An exception was noted. The court immediately proceeded to rule on the requests to charge. (Tr. pp. 154 et seq.). A verdict was returned that afternoon.

It is evident that the court was fully aware of the defense position with respect to venue. Throughout the trial,

3. 18 U.S.C. § 3237 provides, in pertinent part:
    "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

defense counsel argued that no jury charge could be given because, as a matter of law, venue did not exist. In light of these circumstances and the importance of venue in the administration of justice, we find that sufficient objection was made to the theories of venue upon which the jury was instructed. *Cf.*, Roberts v. United States, 109 U.S.App. D.C. 75, 284 F.2d 209, 211 n. 7 (1960), cert. denied, 368 U.S. 863, 82 S.Ct. 109, 7 L.Ed.2d 60 (1961).

Turning to the question of venue, we shall first consider the instruction that the jury could return a verdict of guilty if it found that appellant aided and abetted a criminal utterance of the check in Manhattan.

■ The source of appellant's grievance with respect to this instruction is the fact that most of the evidence at trial was directed to the circumstances of appellant's signing and uttering the check to Gloria Pena; not Gloria Pena's subsequent utterance of the check in Manhattan. According to appellant, the Government began to rely upon the theory that she was guilty of aiding and abetting the subsequent utterance when it became clear, after all the evidence had been introduced, that venue could not be sustained on any other theory. Appellant urges us to consider the belated change in the Government's theory of guilt to be prejudicial. We find the argument unpersuasive.

The second count of the indictment charged, in pertinent part that:

> "the defendant, unlawfully, wilfully and knowingly and with intent to defraud the United States, uttered and published as true *and caused to be uttered and published as true*, a false, forged and counterfeited writing, namely, the endorsement of the payee on a check. . . ." (emphasis added)

By this language, the grand jury clearly informed the appellant that she could be held accountable for her involvement in the subsequent utterance of the forged check by Gloria Pena. *Compare,* Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). While appellant was not expressly charged with aiding and abetting under the applicable statute, 18 U.S.C. § 2, no prejudice resulted from this possible defect. Appellant conceded that a defendant charged as a principal can be convicted as an aider and abettor. Appellant's Brief p. 15; *cf.*, United States v. Sahadi, 292 F. 2d 565, 568–569 (2d Cir. 1961). Moreover, any ambiguity could have been clarified by demanding a bill of particulars. No demand was ever made. (Tr. p. 153) Under these circumstances, appellant cannot now question the adequacy of the indictment.

Not only should appellant have been aware of the aiding and abetting theory of guilt from the indictment, but throughout the course of the trial evidence was introduced which was primarily relevant to that theory of guilt. Thus, for example, appellant's written statement indicates that the check was signed in Gloria Pena's presence and that appellant knew the check was to be deposited in a bank. The check with the endorsement of Gloria Pena bearing the stamp of a Manhattan bank was also introduced as evidence. This evidence was all introduced during the Government's case in chief. Then, as appellant testified as the sole defense witness, in response to questions by the court, appellant stated that she knew Mrs. Pena was to meet her husband and deposit the check in Manhattan.

In addition to the evidence, the above emphasized portion of the indictment, upon which the aiding and abetting theory of guilt was based, was specifically brought to the attention of defense counsel in the course of argument on the first defense motion to dismiss the indictment after the Government had presented its case. (Tr. pp. 66–67). Thus, appellant should have been aware of the aiding and abetting theory of guilt at every stage of the proceedings; from the indictment through the taking of evidence and during argument on defense motions.

■ Appellant also suggests that the aiding and abetting instruction was not supported by sufficient evidence. We disagree.

The evidence indicated that appellant endorsed the check in such a manner as to permit the further endorsement of Mrs. Pena. Appellant's written statement also evidenced an interest in the conversion of the check into money. Thus, appellant first offered to meet Mrs. Pena in Manhattan with the money after the check was cashed. This evidence, in addition to appellant's knowledge of how, when and where the check was to be uttered by Mrs. Pena, and appellant's apparent desire to placate her creditor, was sufficient to submit the aiding and abetting theory of guilt to the jury. Cf., Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); United States v. Peoni, 100 F.2d 401 (2d Cir. 1938); United States v. Campisi, 306 F.2d 308 (2d Cir. 1962), cert. denied, 371 U.S. 925, 83 S.Ct. 293, 9 L.Ed.2d 233 (1962), petition for rehearing denied, 371 U.S. 959, 83 S.Ct. 500, 9 L.Ed.2d 507 (1963).

■ While we conclude that the second count of the indictment was properly submitted to the jury on the aiding and abetting theory of guilt, the alternative theory must also be considered. "It has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality[4] of any of the theories requires that the conviction be set aside." Leary v. United States, 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–1546, 23 L.Ed.2d 57 (1969).[5]

The second theory of guilt upon which the case was submitted to the jury was, as noted, that the crime of uttering a forged check could be considered a "continuing offense" under the circumstances of the case. Accordingly, the jury was instructed that they could return a verdict of guilty if they found that Josefa Rodriguez had criminally uttered the check and that this utterance "constituted a continuing offense that was either begun, continued or completed in the Southern District of New York. . . ." (Tr. p. 196). At issue is the validity of this instruction.

■ The determination of whether 18 U.S.C. § 3237 may be invoked to sustain venue rests upon an analysis of the nature of the crime charged; can the crime of uttering and publishing a forged writing in violation of 18 U.S.C. § 495 be considered a "continuing offense" or is it a "single act crime." Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); United States v. Anderson, 328 U.S. 699, 66 S. Ct. 1213, 90 L.Ed. 1529 (1946).

■ This analysis must, of course, begin with the language of 18 U.S.C. § 495.[6] On its face there is certainly no indication that Congress intended to create an offense "the locality of . . . [which] shall extend over the whole area through which force propelled by an offender operates." United States v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944). By its terms, the statute merely prohibits uttering and publishing forged instruments with the intent to defraud the United States; offenses that are complete when the in-

4. As questions of venue in a criminal case raise issues of constitutional dimension, the above cited holding of Leary clearly controls the disposition of this case. U.S. Const. art. III, § 2; U.S.Const. Amend. VI; United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944).

5. If both theories were improper no trial could be had in the Southern District of New York.

6. 18 U.S.C. § 495 provides, in pertinent part:

"Whoever utters or publishes as true any . . . false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited . . . [is guilty of violating this statute.]"

strument is offered. United States v. Sullivan, 406 F.2d 180 (2d Cir. 1969). There is no intimation that an offender can be tried wherever a forged check might be found after it has been placed in circulation. No legislative history has been cited and none has been discovered which indicates that such a result was intended.

An analysis of the factual nature of the offense similarly supports the conclusion that it is a "single act crime." Offering the forged writing is the single unequivocal act which completes the offense. Of course, the fact that a crime is "completed" within one district does not necessarily mean that it cannot be "continued" in other districts. *Cf.*, United States v. Cores, 356 U.S. 405, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958). In certain circumstances a court may find an offense to be continuing though it was completed in one district if the relevant statutes support such a conclusion and if the result is consistent with the policies upon which the venue statutes are based. *Cf., Cores, supra.* Here, a holding that the crime of uttering a forged writing can be considered a continuing offense would be at odds with the protections afforded by the venue statutes. As was said in United States v. Peoni, *supra*, 100 F.2d at 403 (a case in which a defendant's conviction as an accessory to the possession of counterfeit bills by a remote vendee was reversed):

> "The real gravamen of the charge against him is his utterance of the bills; and he ought not to be tried for that wherever the prosecution may pick up any guilty possessor—perhaps thousands of miles away. The oppression against which the Sixth Amendment is directed could be easily compassed by this device. . . ."

We therefore conclude that the crime proscribed in 18 U.S.C. § 495 is not a continuing offense. The charge to the jury on this theory of guilt was erroneous.

As this theory of venue is incorrect, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.