UNITED STATES of America,

v.

Nicholas DELIA, Defendant.

No. S90 Cr. 0264 (RWS).

United States District Court,
S.D. New York.

Sept. 29, 1990.

Otto G. Obermaier, U.S. Atty. for the S.D. of N.Y. by Jonathan Liebman, Asst. U.S. Atty., of counsel, New York City, for U.S.

Gerald L. Shargel, New York City, for defendant.

## OPINION

SWEET, District Judge.

Defendant Nicholas Delia ("Delia") has moved pursuant to Rule 29(a) for judgment of acquittal on Counts Two through Four charging violations of Title 18 U.S.C. Sections 513(a) and 2 because of the government's failure to prove that venue properly lies in the Southern District of New York. For the reasons set forth below, and stated in open court on September 13, 1990, Delia's motion is denied.

*Prior Proceedings*

Delia was convicted of all charges in a jury trial concluding on September 17, 1990. At the close of the government's case on September 13, Delia moved for acquittal on Counts Two through Four for lack of venue and, after consideration, the motion was denied in open court. On September 14, 1990 an oral version of the substance of this opinion was delivered in open court.

*Facts*

The facts concerning what the government had demonstrated in the trial are not disputed.

Delia is charged with aiding and abetting the substantive counts and, in Count One, with a conspiracy do undertake these violations. There is little question that venue lies in the Southern District for conspiracy.

The dispute presented by able counsel here is whether Delia, for whom there is no proof of any act he committed in the Southern District, can be prosecuted here for the substantive counts and aiding and abetting the substantive counts.

All parties agree that the government has not shown that defendant Delia committed any act in the Southern District of New York relating to the substantive counts charged, namely the "making, uttering, and possessing" of each of three forged checks with the intent to deceive an organization, in this case Bayside Management/Continental Reinsurance company, located in Manhattan, and from which the checks were stolen by accomplices and unindicted coconspirators. The checks were deposited in Brooklyn and there is testimony by a handwriting expert that it cannot be established that Delia traced the name "Walter J. Gross" from a signature also procured from the Continental Reinsurance company in Manhattan.

*Venue*

■ Both Article III, § 2 cl. 3 and the Sixth Amendment guarantee to the defendant the right to be tried in the district where the crime is considered to have been committed and the burden is on the government to prove that the crime was committed in the district in which the defendant is being prosecuted for each count charged. *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989); Fed.R.Crim.P. 18.

■ As the Second Circuit recently stated in *Beech–Nut*, "[i]f the federal statute defining an offense does not indicate explicitly where Congress believes the criminal act is committed, 'the *locus delicti* must be

determined from the nature of the crime alleged and the location of the act or acts constituting it.'" 871 F.2d at 1188 (quoting *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946)). To make this determination, the court is guided by the statement set forth in *United States v. Reed,* 773 F.2d 477, 481 (2d Cir.1985) that:

> the test [for constitutional venue] is best described as a substantial contacts rule that takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding.

One suggested method of beginning this analysis is to look at the "key verbs" used by the statute in defining the offense. *United States v. Chestnut,* 533 F.2d 40, 46–47 (2d Cir.), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976). Accordingly, we turn to the language of Section 513(a) which states in pertinent part that:

> [W]hoever makes, utters or possesses a forged security of a State or ... of an organization, with intent to deceive another person, organization, or government shall be fined or ... imprisoned ... or both.

18 U.S.C. § 513. Additionally, the government contends that § 513 must be read in conjunction with 18 U.S.C. § 3237 whose effect is to make an offense triable "in any district in which such offense was begun, continued, or completed," or "in any district from, through or into which commerce ... moves," 18 U.S.C. § 3237. Delia argues that the case law demonstrates that the crimes charged here are not continuing offenses under 18 U.S.C. § 3237 but rather single act crimes.

### 1. *Key Verbs*

Section 513 contains three key verbs: "makes," "utters," and "possesses."

### A. *"Utters"*

We begin with the verb "utters" because it is the verb construed in *United States v. Rodriguez,* 465 F.2d 5 (2d Cir.1972), the case on which Delia heavily relies. In *Rodriguez,* the defendant appealed from a judgment convicting her of uttering and causing to be uttered a forged Social Security check in violation of 18 U.S.C. § 495, a statute containing the key verbs "utters" and "publishes." The Second Circuit noted that "uttering" was not a continuing crime but rather a complete offense when the instrument is offered because "the statute merely prohibits 'uttering and publishing forged instruments with the intent to defraud.'" *Id.* at 10. "Offering the forged writing," noted the Court, "is the single unequivocal act which completes the offense." *Id.* at 11.

We agree that the evidence failed to establish that Delia uttered the checks in Manhattan. Therefore, there is no venue for "uttering" in the Southern District. The government already has made clear, in the colloquy in the robing room over the indictment and by informal submission that it is not prosecuting under the theory that Delia "uttered" any of the three checks in counts Two through Four.

### B. *"Makes"*

■ The verb "makes" denotes a different form of behavior than the verb "utters." The checks were stolen from an organization in Manhattan. The signature from which the forged signature was traced was also stolen from the same organization in Manhattan. Delia argues that these were merely preparatory acts that do not constitute the "making" of the forged security and relies heavily on a line of perjury cases, including *United States v. Mendel,* 746 F.2d 155, 165 (2d Cir.1984), and *Rodriguez* for the proposition that like, uttering, making is a single act crime.

There is, of course, a fine if inarticulable line between the accomplishment of preparatory acts and the beginning of the act of "making." Delia's narrow interpretation of the word "making," merely would allow for the putting of pen to paper to trace the name onto the check. "Making" cannot be read so narrowly in this context. The beginning of the making occurred with the theft of the signature, if not the theft of

the blank checks from the Manhattan office. The procuring the ingredients of this act of creation—the checks, the signature—were beyond preparatory, and instead essential to the accomplishment of the crime of "making." *See United States v. Stephenson*, 895 F.2d 867 (2d Cir.1990).

*Stephenson*, the Second Circuit's latest word on this subject, presents a situation where the Court had to identify whether acts were preparatory or part of the beginning of the offense. In *Stephenson*, a bribery conviction was upheld on the theory that the defendant's phone calls into New York, "where his bribery targets conducted business" provided venue because the defendant "could have done none of these things [demanding, seeking, receiving, accepting things of value] without entering, by telephone, the Southern District...." 895 F.2d at 874. In *Stephenson*, although the actual bribe occurred in Washington, the Court found that the defendant's phone calls to New York—designed to create the anxiety and climate sufficient to induce the bribe in Washington—"were crucial components of, not merely preparatory to the bribe scheme that culminated ... in Washington, D.C." *Id.* at 874.

Unlike in *Beech–Nut*, 871 F.2d at 1190–91, where phone calls to order adulterated juice and invoices to confirm the purchase could not be considered the "introduction" into commerce of the juice because those calls were preparatory, or *United States v. Bozza*, 365 F.2d 206, 220–21 (2d Cir.1966), where the making of a contract to receive stolen goods was preparatory and not part of the offense of receiving, here, Delia could have done none of the "making" without the checks or signature, the obtaining of which required entrance into Manhattan.

Unlike "uttering" which requires solely the act or declaration that something is good or the offer to show that it is good, "making" is a verb connoting a broader spectrum of action. To make or create you need to bring something into being and to

do so in the context of a forged check requires some ingredient. Here, the making of the forgery required both the checks and the traceable signature from Manhattan. Given the nature of this task to be performed, obtaining the ingredients was the beginning of the making, not acts preparatory to the making. Delia's reliance on *Travis v. United States*, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), and *Mendel* is misplaced in that both of those cases concern the "making" as opposed to the "filing" of false statements and not when the "making" or creation of a false document begins. *See also United States v. Reed*, 773 F.2d 477, 483 & n. 4 (2d Cir.1985) (setting forth the confusion in the perjury cases). Just as phoning to New York was part of the "demand[ing]," "seek[ing] or agree[ing] to receive" in *Stephenson*, the obtaining of the checks and signature was part of the "making" under the present facts.

### C. *"Possesses"*

■ The third verb, "possesses," presents a more familiar legal interpretation than both "utters" and "makes." Possession can be both joint and constructive. Here, the proof adduced could support the charge that Delia "possessed" the checks in the Southern District constructively through his exercise of control over Madeline Rosales ("Rosales") and jointly with Rosales.[1] The crime of "possessing" the forged checks could have begun jointly and constructively, the minute Rosales obtained the checks in Manhattan and had the intent of sharing the checks or turning them over to Delia. Accordingly, venue would lie in the Southern District for "possessing" the checks here constructively through and jointly with Rosales. Unlike *United States v. Davis*, 666 F.2d 195, 200 (5th Cir.1982) where the Fifth Circuit noted that neither the defendant nor the coconspirator possessed or constructively possessed drugs in the district where prosecution was brought, here the coconspirator did possess the forged securities in the Southern District

---

**1.** Evidence adduced at trial revealed that Delia engaged in an adulterous affair with 20 year old Rosales, rented her a new apartment, and introduced her to prostitution.

504

and the government sought to prove that Delia did so jointly or constructively.

Accordingly, an analysis of the verbs contained in § 513 and read in conjunction with § 3237 would indicate that two of the verbs—"makes" and "possesses" could provide the basis upon which venue would lie in the Southern District. *See United States v. Busic,* 549 F.2d 252, 257 (2d Cir. 1979) (distinguishing *Bozza* and *Travis* single act crimes from continuing offenses).

### 2. *Locus of Intended Effects*

■ Another factor in the contacts test set forth in *Reed* requires examination of the locus of the intended effects of the alleged criminal conduct. *Reed,* 773 F.2d at 482. The language of § 513 requires that all of the preceding three verbs be accompanied by an "intent to deceive ... an organization."

Unlike in *Rodriguez* where the intent to deceive the government was at issue, here the intent alleged is the deception of an organization existing in Manhattan. Again, turning to *Reed* where the criminal act, the making of an affidavit occurred in California, the Second Circuit noted that the affidavit was intended for use as testimony in a proceeding in the Southern District and thus the locus of the intended effects of the alleged criminal conduct was the Southern District of New York. *Reed,* 773 F.2d at 483–84. Similarly, in *United States v. Candella,* 487 F.2d 1223, 1227–28 (2d Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974), where the defendants executed false affidavits in Brooklyn, gave them to New York City officials in that borough, and then those officials conveyed the documents to Manhattan, the Court upheld venue in the Southern District by declaring that 18 U.S.C. § 1001 fell within the continuing offense venue statute, 18 U.S.C. § 3237(a). Finally, *Rodriguez,* the very case on which defendant relies for the proposition that these verbs are single acts, suggests that "the fact that a crime is 'completed' within one district does not necessarily mean that it cannot be 'continued' in other districts.... In certain circumstances a court may find an offense to be continuing though it was completed in one district if the relevant statutes support such a conclusion and if the result is consistent with the policies upon which the venue statutes are based." *Rodriguez,* 465 F.2d at 11. Arguably, even if the making of the checks were completed in Brooklyn, the forged check needed to clear ultimately through the Manhattan company to attempt to deceive the organization. *Cf. United States v. Zwego,* 657 F.2d 248, 251 (10th Cir.), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1275, 71 L.Ed.2d 460 (1981) (in prosecution for making false statements in applications for loans from federal bank, venue was laid properly in city where bank received false information).

Accordingly, whether under a continuing offense theory pursuant to 18 U.S.C. § 3237(a) or under an examination of the language of § 513 which explicitly requires the intent to deceive an organization as an element of the offense, the locus of the intended effects of the criminal acts is Manhattan—from where those checks were stolen and to which they returned for clearance, the ultimate destination of the deception, the location of the organization.

### 3. *Suitability of Prosecution*

Neither party contests the appropriateness of prosecuting the conspiracy charge in the Southern District. Moreover, the need for the production of witnesses, the accuracy of fact-finding, the convenience of parties is satisfied by prosecution in the Southern District and neither party suggests a constitutional difference between Brooklyn and Manhattan with respect to this factor. Accordingly, no contest exists over the suitability of prosecution in this district.

Under the test established in *Reed,* in assessing the substantial contacts and the proof offered in this case, Manhattan, as well as Brooklyn, can be fairly described as the locus of the crimes charged. The question that remains, and a factor not weighed above, is what constitutes the "site of *defendant's* acts" when no evidence estab-

lishes that Delia entered the Southern District.

### 4. *Aiding and Abetting*

Finally, we turn to Delia's acts and the distinction Delia asks the court to make between conspiracy and aiding and abetting of the substantive counts. In the context of this case we note the shadowy and perhaps arcane distinctions between conspiracy and aiding and abetting and find that to dismiss the substantive counts in this case while retaining the conspiracy charge would exalt form over substance.

No party contends that Delia walked into the Southern District at any time to commit these crimes. Instead the thrust of the crimes charged in this case—both the conspiracy and substantive counts—is that Delia had an agency relationship with Madeline Vega (who took the checks for Rosales) and Rosales, accomplices and unindicted coconspirators, and that they acted at Delia's behest and he acted through and with them in the Southern District in violation of the crimes charged.

The Fifth Circuit addressed precisely this issue in *United States v. Downing,* 348 F.2d 594 (5th Cir.), *cert. denied,* 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965), where the defendant was charged with one conspiracy count and nine substantive counts. The Court of Appeals found that there could be prosecution for the conduct in a state the defendant never entered on the theory that the defendant was an aider and abettor and his coconspirator had entered that state. *Downing,* 348 F.2d 598–99.

■ Although Delia proffers the equally ancient Second Circuit case of *United States v. Bozza,* 365 F.2d 206, 221–22 (2d Cir.1966) to support the opposite proposition, we do not read *Bozza* as differing significantly from *Downing.*

In *Bozza,* the Court of Appeals stated that:

Congress seems to have been content with venue where the defendant's own accessorial acts were committed *or* where the crime occurred, without pro-

viding still another where the accessorial acts of agents took place.

*Id.* (emphasis added). This language is entirely consistent with the foregoing analysis in that the Circuit recognized that focus of the inquiry may be *either* the defendant's own accessorial acts or where the crime occurred. Contrary to Delia's reading, we read *Bozza* as recognizing that a defendant's acts may occur in a different location than the locus of the crime and yet venue will properly lay in the district in which the crime occurred—whether or not defendant entered that district. *See also Reed,* 773 F.2d at 481 (several potential sites proper for venue because "the constitution does not command a single exclusive venue"). Here, the making and possessing and the intended effects of those criminal acts can be found to have begun, continued, or occurred in Manhattan, which also is the situs of the acts of the agents. *But see United States v. Hurwitz,* 573 F.Supp. 547, 551 (S.D.W.Va.1983) (characterizing offenses as continuing crimes sidesteps issue of whether defendant committed the alleged offenses in the district).

The Court in *Bozza* was dealing with the receiving of stolen goods, an offense designated to be a single act crime, and noted that aiding and abetting was inapplicable to receiving because they construed the "offense" under 18 U.S.C. § 3237(a) as the substantive crime and not the aiding or abetting of that crime. *Id.* 365 F.2d at 220–21. Here, the government contends that the offense began, was continued or completed in Manhattan and that the aiding and abetting relates to the scope of the offense, not acts in addition to the offense. 18 U.S.C. § 2 makes one who aids or abets the commission of a crime punishable as a principal and it is under the theory that Delia's aiding and abetting crimes beginning, continuing or completing in the Southern District makes Delia punishable as a principal in this district. *See United States v. Kilpatrick,* 458 F.2d 864, 868 (7th Cir.1972) (where defendant gave counterfeit bills to another who sold them in Illinois, venue of defendant's conviction in Illinois upheld because 18 U.S.C. § 2 permits the prosecution of aider and abettor not

only in district in which he committed accessorial acts but also district where substantive crime committed).

Finally, given the policy reasons behind venue, the nature of the crime and the criminal behavior, and the location of the acts constituting it, upholding venue in the Southern District comports with Delia's constitutional rights.

It is so ordered.